14639

BANK v. NORTH CAROLINA MUTUAL LIFE INS. CO.

(195 S. E., 649)

May, 1937.

*Messrs. A. C. Platt* and *C. Y. Brown,* for appellant,

*Messrs. Thompson & Burts,* for respondent,

March 11, 1938.

The opinion of the Court was delivered by Mr. Justice Baker.

This is an action for the fraudulent breach of an insurance contract.

The transcript of record is most confusing.

Paragraphs 2 and 3 of respondent's complaint are as follows:

"2. That on or about March 26, 1928, the defendant, in consideration of a weekly premium, issued to Hettie Pittman a policy of insurance on her life in the sum of Seventy-five dollars, ($75.00), wherein and whereby they agreed to pay to the named beneficiary the sum of Seventy-five dollars ($75.00), on death of the said Hettie Pittman.

"3. That on or about the ...... day of ......, 1933, the said policy of insurance was lost or destroyed and the said Hettie Pittman applied for a new policy, and on the *4th day of September, 1933,* the defendant issued to Hettie Pittman a lost policy certificate and made this plaintiff the beneficiary therein and delivered to this plaintiff the said certificate." (Italics added.)

The answer of appellant admitted these allegations. For a second defense, appellant alleged that under the terms of the policy contract, and in accordance therewith, and an application therefor filed by the insured, Hettie Pittman, on the 27th day of January, 1936, the beneficiary in the policy was changed from respondent to the insured's estate. And for a third defense, that payment of the full death benefit, $75.00, was on February 5, 1936, made to Hettie Pittman, the insured, at her request and under her policy contract.

Plaintiff-respondent's Exhibit A is a lost policy certificate issued by appellant bearing the number 713795, dated 3–26–28, showing Hettie Pittman as the insured, the "Kind of Policy, HA. 5—75.00," and "Name of Beneficiary, *Edner B. Brown.*" The date of this certificate is *September 4, 1933.*

There is a statement in the brief of appellant that on the back of the foregoing certificate there was an indorsement to the effect that the beneficiary had been changed to the plaintiff, Nan Bank. The transcript of record failed to disclose this information.

Plaintiff-respondent's Exhibit B is a lost policy certificate issued by appellant bearing the number 713795 (the same number as in Exhibit A), dated 3–26–28 (the same date

of the policy shown in Exhibit A), showing Hettie Pittman as the insured, the "Kind of Policy, H. & A., Disability Benefits—$5.00, Death Benefits—$75.00," and "Name of Beneficiary, *Nan Bank.*"

This last-described certificate is dated February 10, 1936, five days after it is alleged in the answer of appellant that it had paid the full death benefit to Hettie Pittman after she had changed the beneficiary (as she had a right to do under the terms of the original policy it is claimed) from respondent to her (Hettie Pittman's) estate. On the trial of the case, there was testimony that the $75.00, less 50 cents—two weeks' premiums—was paid to Hettie Pittman on February 5, or 10, 1936, "about two weeks before she died on February 21, 1936."

An application for a duplicate of the policy in issue was made to appellant by Hettie Pittman on January 20, 1936 (appellant's Exhibit A). Apparently a duplicate policy was never issued. We gather from appellant's brief that respondent's Exhibit B was issued by reason of the application of January 20, 1936. Respondent's possession of this lost policy certificate is not explained.

On January 27, 1936, thirteen days before appellant issued this lost policy certificate showing respondent as beneficiary (her Exhibit B), Hettie Pittman, the insured, signed appellant's form 30 for a change of beneficiary in the policy from Nan Bank, the respondent, to her (Hettie Pittman's) estate (Appellant's Exhibit B).

It is stated in appellant's brief that the following: "Policy No. 713795 on Life of Hettie Pittman. Beneficiary Estate. Relationship ....... Age ....... Amt. Insured $75.00.— Weekly Premium .25. Date of Policy 3–26–28. Agt. C. A. Bracey Dist. Spartanburg Debit No. 2667 Supt. Note—10 cents in stamps must be sent with this form. Page in Life Register 20," appears on the back of the lost policy certificate dated February 10, 1936, and introduced in evidence as respondent's Exhibit B. The above-quoted matter appears in the record as the lost portion of appellant's Exhibit A, and

as a part of the application of the insured, Hettie Pittman, for duplicate policy.

All of the foregoing is taken from the record as it comes to this Court, with no attempted explanation in the testimony of the various discrepancies.

Appellant's brief does not state the issues, although a submitted case under the rules, but we will undertake to pass upon the exceptions.

The first exception alleges error on the part of the trial Judge in refusing to allow appellant to put in evidence a copy of the original policy issued by appellant to Hettie Pittman.

It was admitted by all parties to the action that the original policy, No. 713795, was lost or destroyed. In an abundance of caution, appellant had given respondent notice to produce, and in the event of her failure so to do, secondary evidence of the contents thereof would be offered. Of course, under the circumstances, the best evidence of the contents of the policy, was (1) a duplicate; (2) a copy.

During the cross examination of respondent, appellant's counsel offered in evidence what he stated was a duplicate of the original policy. Its admission was objected to by respondent's counsel, not on the ground that there was no proof that it was a duplicate, but on the ground, apparently, that the respondent had no notice of the contents and provisions of the policy, and that the only contract betwixt respondent and appellant was the lost policy certificate, notwithstanding the fact that this certificate directly referred to the policy of insurance and by number, and derived its very existence from the policy. The duplicate policy was offered for the purpose of showing that the insured, Hettie Pittman, had the privilege of changing the beneficiary, and that appellant had the right to make a cash settlement with the insured during her lifetime if there were no outstanding beneficiary, and if the policy was at the time of such settlement payable to the estate of the insured.

The trial Judge, after argument, disallowed the admission of the duplicate policy on the ground that respondent did not have notice of the provisions of the policy; it never having been in her possession. After further argument on the part of appellant's counsel, the trial Judge had this to say: "I will not allow them to go into the original policy as yet. I may go into it later as to what it is."

Of course, the duplicate policy was not admissible until there was evidence that it was a duplicate or copy of the original, but, as aforesaid, no question was made of this. It may be that had the objection been made on this ground, appellant was in a position to show by testimony that it was a duplicate or copy.

Before this Court could pass upon the admissibility of the proffered testimony, and the exception relating thereto, there must have been a final ruling by the trial Judge, which was not had by appellant again offering in evidence the duplicate policy. When it was offered, the trial Judge made the remarks hereinbefore set out, which clearly indicated that he was not making a final ruling. He refused the admission in evidence of the duplicate policy "as yet," stating: "I may go into it later as to what it is."

The appellant is precluded from having this exception passed upon by the holding in the case of *Armstrong v. A. C. L. R. R. Co.,* 137 S. C., 113, 133 S. E., 826, 827, 48 A. L. R., 482.

During the trial of the *Armstrong case,* certain testimony was objected to by the counsel for the railroad company, and, in making the objection, counsel cited the case of *Templeton v. C. & W. C. Railway Co.*, 117 S. C., 44, 108 S. E., 363, to sustain his position. The trial Judge stated: "I would like to see your authority. I will let it in now, and if I am wrong, will strike it out." The witness was then allowed to answer the question. Counsel immediately made a motion to strike the answer, and the Court in refusing so to do, said: "The motion is refused. I will refuse the motion at this time."

This was made a ground of appeal, and this Court, in passing thereon, stated: "It will be observed that this entire colloquy related to the same testimony and it is perfectly clear that the trial Judge admitted it only tentatively. The appellant's counsel was squarely put on notice that the ruling as to the admissibility of the testimony in the first instance and as to the motion to strike it out in the second instance was in no sense final. Further, the Judge specifically stated to appellant's counsel that he wanted to see the authority mentioned, and that, if he was wrong in admitting the testimony, he would strike it out. Careful examination of the record does not disclose that at any time thereafter during the trial or at the close thereof did counsel for the appellant show his authority to the Judge or renew his motion to strike out the objectionable testimony, and alleged errors in reference thereto will not now be considered by this Court.

"In 3 C. J., 824, we find: 'But an assignment of error in the reception of evidence will not be considered, where it appears that the court admitted the evidence subject to exceptions, or otherwise postponed without objection a decision as to the admissibility of the evidence, and a subsequent ruling was not sought by a motion in accordance with the conditions prescribed by the Court'."

There was then discussed two other cases from our Court, and cases from various other state Courts; and the Federal Court case of *Curcuru v. Peninsular Electric Light Co.,* 6 Cir., 258 F., 785, 170 C. C. A., 79. Following the discussion of these cases, Mr. Justice (now Chief Justice) Stabler, writing the unanimous opinion of the Court, had this to say: "It is clear from the cases cited that, before the admission of testimony objected to at the trial can be considered by the appellate Court as a basis for review, it must appear that the trial Judge made a *final ruling* as to the admissibility of the testimony. This is especially true where the Judge clearly indicates certain conditions upon which the testimony admitted may be stricken out and these conditions are not complied with by the objecting party. In the case at bar we do

not see how the trial Judge could have indicated more unmistakably that he was reserving *final decision* on the admissibility of the testimony, and he specifically requested the appellant's counsel to show him the case relied upon to exclude the testimony. It is difficult to see what more he could have done to show that his *final ruling* was held in abeyance pending his decision upon the point raised by the appellant's counsel after examination of the case relied on. It does not appear anywhere in the record that appellant's counsel thereafter brought his authority to the attention of the trial Judge, or renewed his motion to strike out the testimony, or demanded a *final ruling* as to the admission of the testimony or as to his motion to strike it out after it was tentatively admitted. It is a salutary rule that requires a *final ruling* on the admission of testimony before an exception based thereon can be reviewed by an appellate Court, as without a demand for a *final ruling* the trial Court and the opposing litigant, as suggested in the *Curcuru case,* may well assume that the objection has been waived. The exception of appellant cannot be sustained."

Exceptions 2, 3, 5, and 7 are predicated upon the terms and provisions of the duplicate policy, which was not in evidence, and therefore not before the Court.

■ Evidence of the payment to Hettie Pitman of the face of the policy was inadmissible as being immaterial and irrelevant until and unless there was in evidence the duplicate policy, and therefore Exception 4 is also overruled. The appellant had introduced in evidence testimony that Hettie Pittman had been paid the face of the policy, and the receipt alleged to have been signed by her for this payment was merely corroborative.

■ It nowhere appears in the record that the castigation by the trial Judge of appellant's witness while on the witness stand was made a ground for a new trial when the motion was argued, and the order refusing a new trial does not refer to any such ground having been made.

Exception 8 alleges error in not directing a verdict as to punitive damages.

The only motion made for a directed verdict as disclosed by the record is in the following language: " * * * We wish to make a motion for a directed verdict on the same grounds stated, that the contract is between the insured and the insurer and that the beneficiary has no interest whatsoever."

The trial Judge was not requested to direct a verdict as to punitive damages, but on the whole case, for that the respondent had no interest in the certificate sued upon. However, the evidence which had been admitted was sufficient to take the case to the jury on the question of fraud and willfulness, accompanied by a fraudulent act.

All exceptions are overruled, and the judgment affirmed.

Messrs. Justices Bonham and Fishburne and Mr. Acting Associate Justice Wm. H. Grimball concur.

Mr. Chief Justice Stabler and Mr. Justice Carter did not participate on account of illness.