## A01A2051. BAKER v. THE STATE.
(555 SE2d 899)

ELLINGTON, Judge.

A Bibb County jury convicted Randolph Baker of two counts of aggravated child molestation, OCGA § 16-6-4 (c), and one count of child molestation, OCGA § 16-6-4 (a). The trial court denied his motion for new trial, and he appeals. Finding no error, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the jury's verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Viewed in this light, the evidence showed that Baker was the live-in boyfriend of the mother of four children: a nine-year-old girl, B. A.; a six-year-old girl, B. F.; a six-year-old boy, B. F.'s twin; and a seven-year-old boy. The mother was employed as a child care worker and sometimes sang in a band at night. She testified that she left the children alone with Baker only two times.

In late June 1997, the children were visiting the home of Baker's sister. Nine-year-old B. A. told her cousins that Baker had touched her between her legs. The cousins reported this statement to Baker's sister, who called the children's mother. The mother and Baker's sister talked with B. A., who reported that Baker recently had touched her breasts and put his hand between her legs. B. A. told her mother that she had not reported the abuse sooner because she was afraid her father would not let her stay at her mother's apartment anymore.

After speaking with B. A., the mother sent the child out of the room and called in six-year-old B. F. The mother testified that she did not think B. F. had been abused, but only wanted to know if she had witnessed the abuse of B. A. When asked if anyone ever touched her where she did not want to be touched, however, B. F. reported that Baker had licked his fingers and touched her genitals. B. F. also told her mother that Baker had tried to put his penis in her vagina. According to the child, one incident occurred when the mother was at work and the other occurred when the mother was at a band rehearsal.

After hearing the girls' reports of abuse, the mother confronted Baker, who denied the allegations. The mother called the fathers of

the two girls and arranged for the children to stay at a grandparent's home until the fathers could pick them up. Both girls told their fathers about the abuse. B. F.'s father took her to the hospital, where he was referred to the Crescent House, a facility for sexually abused children. A pediatric physician examined B. F. at the Crescent House and found that the child's hymen had been "eroded," most likely through chronic, repeated penetration. During the exam, B. F. spontaneously told the physician that her "momma's boyfriend" had touched her, licked her, and put his penis "down there." The physician also opined at trial that it was very unlikely that a prepubescent boy could have had sexual intercourse with B. F. and caused her injury.

The same day, an investigator from the Macon Police Department conducted videotaped interviews of both girls at the Crescent House. The State introduced the videotapes at trial. Before trial, Baker challenged the admissibility of the tapes. The State proffered evidence about the circumstances surrounding the taped interviews in order to demonstrate their reliability. The State specifically notified Baker that B. F. would not be called as a prosecution witness, while noting that B. A. would testify. Before the tapes were shown to the jury, the investigator testified that she conducted the videotaped interview of B. F. on July 2, 1997. She testified that she had over 500 hours of specialized training in interviewing child sexual abuse victims and investigating child abuse cases. She has performed "hundreds" of sexual abuse interviews with children. The investigator testified that she conducts her interviews in a "child-friendly" environment, and she and the child are the only people present during the videotaped interview. She testified that she interviewed B. F. using the RATAC method of interviewing children. According to the investigator, "The R stands for gaining rapport with the child, and the A stands for the anatomy identification, and the T stands for touch inquiry, and the A stands for abuse scenario, and the C stands for closure." The investigator testified that she gains rapport with a child by asking general questions about school and by drawing a picture of the child. She explained that she does not use leading questions and does not threaten the child for nondisclosure or reward the child for making a disclosure.

When the investigator began the interview with B. F., she talked to her about her family and drew pictures of each person identified by B. F. After B. F. had named her mother and siblings, the investigator asked if anyone else lived in B. F.'s apartment. B. F. responded that her mother's boyfriend, Baker, lived with them, but she did not want his picture placed with the other family members because "he be touching on me." When asked where he touched her, the child pointed to her vaginal area. The child told the investigator that

Baker touched her on two different occasions, once when her mother was at work and another time when her mother was at band rehearsal. According to the child, Baker put saliva on his fingers and put lotion on her vaginal area and attempted to have intercourse with her. The child also told the investigator that Baker put his tongue on her genitals. B. F. used anatomical dolls to show what Baker did to her, pulling down the pants of the female doll and placing the male doll on top.

The investigator also interviewed B. A. using the same RATAC technique. B. A. told the investigator that she and the other children were lying in her mother's bedroom with Baker when he rubbed her genitals three or four times on the outside of her clothes. B. A. told him to stop, and Baker got up and left the room. B. A.'s testimony at trial was consistent with her outcry statements and interview.

1. Baker contends the trial court erred in admitting the videotaped interviews with the children. He argues that the Child Hearsay Statute, OCGA § 24-3-16,[1] prohibits the admission of a child's out-of-court statement unless (a) the child is available to testify in court and (b) the State demonstrates that the statement was made under conditions that provide sufficient indicia of reliability. He complains that the tapes were improperly admitted because the younger child, B. F., was not available to testify at trial, and because the State did not establish the reliability of the videotaped statements. This enumeration lacks merit.

(a) Baker complains that B. F. was not available to testify at trial, but points to nothing in the record to support this assertion except the fact that the child did not, in fact, testify. The issue of her availability was not raised at trial.

In *Sosebee v. State*, 257 Ga. 298, 299 (357 SE2d 562) (1987), the Supreme Court of Georgia outlined the procedure to be followed by the trial court if the prosecution introduces out-of-court declarations by an alleged victim under the Child Hearsay Statute. In *Sosebee*, the Court ruled as follows:

> Before the state rests, the court shall, *at the request of either party*, cause the alleged victim to take the stand. The court shall then inform the jury that it is the court who has called the child as a witness, and that both parties have the opportunity to examine the child. The court shall then allow both

---

[1] Under OCGA § 24-3-16,

[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

> parties to examine and cross-examine the child as though the Child Hearsay Statute has not been invoked.

(Emphasis supplied.) Id.

In this case, Baker knew that the videotaped interview of B. F. was to be played for the jury and that B. F. would not be testifying for the State. The record shows that he had the opportunity to call B. F., but that he did not inquire about B. F.'s availability to testify at trial, nor did he request that the child be produced to testify. Accordingly, the failure of the child to testify at trial did not make the videotape inadmissible at trial.

(b) Baker also argues that the State failed to establish that the videotaped statements had the requisite indicia of reliability arising from the circumstances surrounding the interviews. See *Gregg v. State*, 201 Ga. App. 238, 239-241 (3) (411 SE2d 65) (1991) (outlining ten factors that may be considered in determining whether a child's out-of-court statement is reliable). In *Gregg*, this Court held that

> while the [trial] court must find that the circumstances of the [child hearsay] statement provide sufficient indicia of reliability, such finding is not a *condition precedent* to the admissibility of the statement; rather, this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding. In fact, our courts have consistently held OCGA § 24-3-16 does not require a hearing to determine "indicia of reliability" be held prior to receiving the testimony.

(Citation and punctuation omitted; emphasis in original.) Id. at 239 (3) (a).

Before the trial began in this case, the State proffered substantial evidence to establish the reliability of the statements. This proffer was then supported by evidence presented at trial. Having reviewed this evidence, we find that the State fulfilled its burden in demonstrating that the children's statements had the "requisite degree of trustworthiness" to be admitted at trial. *Gregg v. State*, 201 Ga. App. at 241 (3) (b). The trial court did not abuse its discretion in admitting the videotapes. Id. at 240 (3) (a).

Further, much of Baker's argument centers around alleged conflicts in the children's stories, speculation about possible coaching of the children before the interview, and other issues that address the credibility of the witnesses themselves. Determinations as to the credibility of a witness are a matter solely within the jury's purview, and such determinations will not be disturbed on appeal. OCGA § 24-9-80; *Johnson v. State*, 245 Ga. App. 690, 691 (1) (538 SE2d 766) (2000).

2. Baker contends the trial court erred when it allegedly denied him the opportunity to present evidence of sexual play between six-year-old B. F. and her twin brother. He argues that he should have been allowed to develop his defense theory that this sexual play was another possible cause of B. F.'s injuries. Baker, however, presented the testimony of B. F.'s cousin, who babysat B. F. and her twin brother when they were four or five years old. The cousin testified that she found the twins in bed together one night without their clothes on and "on top of each other." Baker has not articulated what additional evidence, if any, he was prevented from presenting to the jury. Accordingly, pretermitting whether the trial court's ruling was error, Baker has failed to demonstrate that he was harmed by the ruling. See *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998) (a defendant must show both error and harm affirmatively by the record to authorize a reversal on appeal).

3. Finally, Baker contends the evidence was insufficient to support the jury's verdict and that, therefore, he was entitled to a directed verdict. We have reviewed the entire record and find that the evidence was sufficient for a rational factfinder to find the defendant guilty beyond a reasonable doubt of the crimes charged. *Padgett v. State*, 175 Ga. App. 818, 819 (334 SE2d 883) (1985) (corroboration of a victim's testimony is not required to support a conviction of child molestation); see also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Accordingly, Baker was not entitled to a directed verdict of acquittal.

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 1, 2001.

*W. Lee Robinson*, for appellant.

*Howard Z. Simms, District Attorney, Myra H. Kline, Assistant District Attorney*, for appellee.