626 S.E.2d 59
**The STATE, Respondent,**
v.
**William R. DOUGLAS, Appellant.**
**No. 4075.**
Court of Appeals of South Carolina.
Heard Jan. 10, 2006.
Decided Jan. 23, 2006.
Rehearing Denied April 20, 2006.

---

500

502

504

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General David Spencer, all of Columbia; and Solicitor C. Kelly Jackson, of Sumter, for Respondent.

ANDERSON, J.:

William R. Douglas (Douglas) was convicted of committing a lewd act upon a minor and sentenced to twelve years. On appeal, Douglas argues the trial court erred in admitting the testimony of Gwen L. Herod as an expert in forensic interviewing and in disallowing the testimony of Amelia Douglas that the victim lied to her in the past. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In February of 2003, Cathryn Douglas and her daughter (the victim) talked about "the birds and the bees." Cathryn told the victim "about sex, [the] difference between [a] man and woman ..., and not to do things with the man and if a man was to touch her for her to come out and say." At that time, the victim informed Cathryn that Douglas, Cathryn's husband, had "done that to her." The victim advised Cathryn that Douglas had touched her inappropriately during the summer and fall of 2002, when she was seven years old. Cathryn called the victim's grandmother, with whom the victim lived. The victim told her grandmother what occurred. Victim's grandmother notified the Sumter County Sheriff's Department.

On February 10, 2003, Officer Doris McGee, the investigator assigned to the case, contacted the victim's grandmother and asked to see the victim as soon as possible. That same day, the victim was interviewed by Gwen L. Herod, a victim assistance officer with the Sumter County Sheriff's Office. Based on this interview, Herod recommended the victim be taken for a medical examination at the Durant Children's Center in Florence.

During this time, Kathy Saunders worked as a pediatric nurse practitioner at the Durant Children's Center. On February 21, 2003, Saunders examined the victim and found tearing on her vaginal opening and scarring on her fossa, which "sits . . . just in front of the hymen."

Douglas was charged with first degree criminal sexual conduct with a minor and committing a lewd act upon a minor. At trial, the victim declared that (1) Douglas' "weenie" touched her mouth; (2) Douglas stuck his "weenie" into her "pee pee"; (3) Douglas' mouth touched her "boobs"; (4) he "put his mouth into [her] mouth"; and (5) "the white stuff came out of [Douglas'] weenie." Douglas called his mother, Amelia Douglas, in part to impeach the victim's testimony that the victim "told the truth to her."

The State offered Herod as an expert in forensic interviewing. In addition, Saunders testified about the medical examination she performed on the victim, the vaginal tears, and the fossal scarring. Saunders opined that "the impression of the vaginal exam was that it was consistent with past penetration."

The jury found Douglas guilty of committing a lewd act upon a minor. The trial court granted a mistrial on the criminal sexual conduct charge. The judge sentenced Douglas to twelve years.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Wood,* 362 S.C. 520, 608 S.E.2d 435 (Ct.App. 2004). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105 (2000); *State v. Landis,* 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004). On appeal, we are limited to determining whether the trial judge abused his discretion. *State v. Walker,* S.C., 623 S.E.2d 122 (Ct.App.2005). This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *State v. Davis,* 364 S.C. 364, 613 S.E.2d 760 (Ct.App.2005); *State v. Mattison,* 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

### *LAW/ANALYSIS*

Douglas asserts the trial court erred in allowing Herod to testify as an expert in forensic interviewing because (1) forensic interviewing is not a recognized area of expertise; (2) Herod's testimony improperly bolstered the victim's testimony; and (3) the probative value of Herod's testimony was substantially outweighed by its prejudicial effect.

## I. FORENSIC INTERVIEWING

Douglas contends the trial court erred in finding forensic interviewing is a field of expertise. We commence our unprecedented and neoteric juridical journey in analyzing this novel issue.

### A. Qualification of Expert Witness

■ The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's sound discretion. *Fields v. Regional Med. Ctr. Orangeburg,* 363 S.C. 19, 609 S.E.2d 506 (2005); *State v. Myers,* 301 S.C. 251, 391 S.E.2d 551 (1990); *State v. Harris,* 318 S.C. 178, 456 S.E.2d 433 (Ct.App.1995); *see also Prince v. Associated Petroleum Carriers,* 262 S.C. 358, 365, 204 S.E.2d 575, 579 (1974) ("Whether a witness has qualified as an expert, and whether his opinion is admissible on a fact in issue, are matters resting largely in the discretion of the trial judge."). The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion. *State v. Myers,* 359 S.C. 40, 596 S.E.2d 488 (2004); *Mizell v. Glover,* 351 S.C. 392, 570 S.E.2d 176 (2002); *State v. Grubbs,* 353 S.C. 374, 577 S.E.2d 493 (Ct.App.2003); *State v. Henry,* 329 S.C. 266, 495 S.E.2d 463 (Ct.App.1997); *see also Jenkins v. E.L. Long Motor Lines, Inc.,* 233 S.C. 87, 94, 103 S.E.2d 523, 527 (1958) ("It was for the trial [c]ourt to say whether the inquiry was one upon which expert testimony was proper, and its ruling thereon will not be disturbed unless its [sic] appears that there has been an abuse of discretion.").

■■ An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Fields,* 363 S.C. at 26, 609 S.E.2d at 509; *Renney v. Dobbs House, Inc.,* 275 S.C. 562, 274 S.E.2d 290

(1981); *see also Simon v. Flowers,* 231 S.C. 545, 550, 99 S.E.2d 391, 393–94 (1957) (" '[E]rror at law' exists: (1) when the circuit judge, in issuing [the order], was controlled by some error of law . . . or (2) where the order, based upon factual, as distinguished from legal, considerations, is without adequate evidentiary support."); *McSween v. Windham,* 77 S.C. 223, 226, 57 S.E. 847, 848 (1907) ("[T]he determination of the court will not be interfered with, unless there is an abuse of discretion, or unless the exercise of discretion was controlled by some error of law."). A trial court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion when the ruling is manifestly arbitrary, unreasonable, or unfair. *Fields,* 363 S.C. at 26, 609 S.E.2d at 509; *Grubbs,* 353 S.C. at 379, 577 S.E.2d at 496; *Means v. Gates,* 348 S.C. 161, 558 S.E.2d 921 (Ct.App.2001).

██ To warrant reversal based on the admission or exclusion of evidence, the complaining party must prove both the error of the ruling and the resulting prejudice. *Vaught v. A.O. Hardee & Sons, Inc.,* 366 S.C. 475, 623 S.E.2d 373 (2005); *Fields,* 363 S.C. at 26, 609 S.E.2d at 509; *Hanahan v. Simpson,* 326 S.C. 140, 485 S.E.2d 903 (1997); *Ellis v. Davidson,* 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). To show prejudice, there must be a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof. *Fields,* 363 S.C. at 26, 609 S.E.2d at 509.

██ The test for qualification of an expert is a relative one that is dependent on the particular witness's reference to the subject. *Wilson v. Rivers,* 357 S.C. 447, 593 S.E.2d 603 (2004). Rule 702, SCRE, articulates guidelines for the admissibility of expert testimony. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. There is no abuse of discretion as long as the witness has acquired by study or practical experience such knowledge of the subject matter of his testimony as would enable him to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common

knowledge. *State v. Henry*, 329 S.C. 266, 495 S.E.2d 463 (Ct.App.1997); *State v. Goode*, 305 S.C. 176, 406 S.E.2d 391 (Ct.App.1991). For a court to find a witness competent to testify as an expert, the witness must be better qualified than the fact finder to form an opinion on the particular subject of the testimony. *Ellis*, 358 S.C. at 525, 595 S.E.2d at 825; *Mizell v. Glover*, 351 S.C. 392, 570 S.E.2d 176 (2002); *Crawford v. Henderson*, 356 S.C. 389, 589 S.E.2d 204 (Ct.App.2003); *see also Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997) ("To be considered competent to testify as an expert, 'a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony.' "). An expert is not limited to any class of persons acting professionally. *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598; *Thomas Sand Co. v. Colonial Pipeline Co.*, 349 S.C. 402, 563 S.E.2d 109 (Ct.App.2002). There is no exact requirement concerning how knowledge or skill must be acquired. *Honea v. Prior*, 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988).

■ The party offering the expert has the burden of showing the witness possesses the necessary learning, skill, or practical experience to enable the witness to give opinion testimony. *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996); *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993); *Henry*, 329 S.C. at 274, 495 S.E.2d at 466. Generally, however, defects in the amount and quality of the expert's education or experience go to the weight to be accorded the expert's testimony and not to its admissibility. *Id.; see also Brown v. Carolina Emergency Physicians, P.A.*, 348 S.C. 569, 580, 560 S.E.2d 624, 629 (Ct.App.2001) ("Any defect in the education or experience of an expert affects the weight and not the admissibility of the expert's testimony.").

■ The admissibility of scientific evidence is dependent on whether the expert relied on scientifically and professionally established techniques. *State v. Jones*, 273 S.C. 723, 259 S.E.2d 120 (1979). This standard is designed to prevent the fact finders from being misled by the aura of infallibility surrounding unproven scientific methods. *State v. Morgan*, 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997). However, not all

expert testimony is subject to a *Jones* challenge. *State v. Whaley,* 305 S.C. 138, 406 S.E.2d 369 (1991). "If the expert's opinion does not fall within *Jones,* questions about the reliability of an expert's methods go only to the weight, but not admissibility, of the testimony." *Morgan,* 326 S.C. at 513, 485 S.E.2d at 118. For instance, this includes the testimony of behavioral science experts. *Id.* at 513, 485 S.E.2d at 118 (finding the *Jones* analysis was not applicable to the type of behavioral science testimony at issue in that case). In finding that expert testimony on eyewitness reliability was found admissible, the supreme court in *Whaley* rejected the necessity of a *Jones* analysis for that type of evidence to show that the field was a recognized area of expertise:

> The admissibility of *scientific* evidence depends upon "the degree to which the trier of fact must accept, on faith, scientific hypotheses not capable of proof or disproof in court and not even generally accepted outside the courtroom." *State v. Jones,* 273 S.C. 723, 259 S.E.2d 120 (1979) (emphasis added). Dr. Cole's testimony, however, is distinguishable from "scientific" evidence, such as DNA test results, blood spatter interpretation, and bite mark comparisons. An eyewitness identification witness gives expert opinion evidence similar to the type given by doctors or psychiatrists. Where the witness is a qualified psychologist who simply explains how certain aspects of every day experience shown by the record can affect human perception and memory, and through them, the accuracy of eyewitness identification, we see no reason to require a greater foundation. *People v. McDonald,* 37 Cal.3d 351, 208 Cal. Rptr. 236, 690 P.2d 709 (1984). Consequently, we are not persuaded that this type of testimony is required to meet the *Jones* test.

*Whaley,* 305 S.C. at 142, 406 S.E.2d at 371–72 (emphasis in original).

## B. Recognized Areas of Expertise in South Carolina

South Carolina recognizes a veritable plethora of areas in which an expert "has acquired by study or practical experience such knowledge of the subject matter of his testimony as would enable him to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the

jury's good judgment and common knowledge." *State v. Henry*, 329 S.C. 266, 273, 495 S.E.2d 463, 466 (Ct.App.1997); *see, e.g., Fields v. Regional Med. Ctr. Orangeburg*, 363 S.C. 19, 609 S.E.2d 506 (2005) (upholding the South Carolina Court of Appeals' decision that a physician's lack of board certification in a specialized area goes to his weight and credibility, and not his qualification as an expert); *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004) (reversing the decision of the trial court disallowing the expert affidavit of a law school professor that defendant law firm had an attorney-client relationship with plaintiff); *Burroughs v. Worsham*, 352 S.C. 382, 574 S.E.2d 215 (Ct.App.2002) (affirming the admission of the expert opinion of a medical doctor that if defendant had diagnosed decedent's cancer earlier, cancer would have been more curable); *Means v. Gates*, 348 S.C. 161, 558 S.E.2d 921 (Ct.App.2001) (finding a neuropsychologist qualified to offer his opinion of the cause and extent of plaintiff's injuries despite his not being a medical doctor); *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 494 S.E.2d 835 (Ct.App.1997) (holding a licensed professional engineer may offer his opinion that a log skidder was defectively designed because it allowed debris into the throttle chamber, which caused the throttle to stick).

South Carolina appellate courts recognize the significance of expert testimony to assist or guide the trier of fact in criminal cases. *See, e.g., State v. Ellis*, 345 S.C. 175, 547 S.E.2d 490 (2001) (clarifying that while police officer may testify as expert in crime scene processing and fingerprint identification, he may not testify to ultimate issue as to whether defendant acted in self-defense); *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996) (upholding trial court's decision to allow forensic pathologist to testify, during sentencing, about the amount of pain victim suffered); *State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991) (finding eyewitness identification expert qualified); *State v. Myers*, 301 S.C. 251, 391 S.E.2d 551 (1990) (allowing expert in blood spatter interpretation to testify); *State v. Childs*, 299 S.C. 471, 385 S.E.2d 839 (1989) (qualifying a bloodhound handler as an expert witness).

More specifically, South Carolina courts allow the testimony of experts evaluating victims in sexual abuse cases. In *State v. Schumpert*, the Supreme Court of South Carolina held the

trial court did not abuse its discretion in qualifying a mental health counselor to testify about rape trauma syndrome. *Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993). The Court of Appeals, in *State v. Weaverling,* determined the trial court properly qualified a social worker as an expert in the field of victims of sexual abuse. *Weaverling,* 337 S.C. 460, 523 S.E.2d 787 (Ct.App.1999). Similarly, this court allowed the testimony of a mental health counselor in the field of evaluation and treatment of sexually abused children and posttraumatic stress. *See State v. Morgan,* 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997).

## C. Other Jurisdictions

In *Mooneyham v. State,* 915 So.2d 1102 (Miss.Ct.App.2005), the Court of Appeals of Mississippi affirmed the trial court's qualification of a witness in the field of forensic interviewing:

> Carol Langendoen testified at trial that she had completed a forty-hour training course that was nationally recognized and accepted in the field of "Finding Words." The purpose of the course was to train social workers how to conduct forensic interviews of children suspected of having been sexually or physically abused, or who have witnessed a violent crime. The "Finding Words" protocol is designed to help interviewers to interview child witnesses in such a way as to avoid suggesting facts or testimony to the child. Langendoen stated that she had performed 134 interviews on children, and had completed 126 training hours in forensic interviewing, and some 215 hours in training for child abuse cases generally. Langendoen further testified that she had attended over 340 hours of continuing education in the field of child abuse, and in forensic interviewing specifically.
>
> . . . .
>
> ... We ... find that there was a credible basis for accepting Langendoen as an expert in the area of forensic interviewing. The admission of Langendoen's testimony was within the sound discretion of the trial court, and no abuse of that discretion is evident.

*Id.* at 1104.

The Court of Appeals of Georgia, in *In re A.H.,* 259 Ga.App. 608, 578 S.E.2d 247 (2003), addressed the RATAC method of forensic interviewing:

A.H. also asserts that the investigator did not have proper training in handling a child interview appropriately and that he did not employ appropriate techniques. This assertion lacks merit. The investigator's primary duty was to investigate child abuse complaints, and he had taken specialized training courses in interviewing children in sex abuse cases. He conducted the interview in a specialized, "child-friendly" environment. Only he and the child were present, and **he employed a known method for interviewing child victims, the RATAC method,** described by a witness in *Baker v. State*, 252 Ga.App. 238, 239, 555 S.E.2d 899 (2001). This acronym stands for gaining rapport with the child, anatomy identification, touch inquiry, abuse scenario, and closure. *Id.* Although the investigator may not have been familiar with the specifics of the named protocol, he followed each of the steps in this case. After establishing initial rapport with the child victim, he used drawings to determine anatomy identification, and he questioned the child about good touch and bad touch. He then inquired specifically about the alleged abuse, before ending the interview. Reviewing all the factors to be considered, we conclude that the juvenile court did not abuse its discretion in admitting the videotape or considering the child's testimony.

*Id.* at 250 (emphasis added).

Thereafter, the Court of Appeals of Georgia found a psychologist was qualified as an expert in the area of forensic interviewing of child sexual abuse victims:

Maddox charges his trial attorney with ineffective assistance in failing to object to testimony by the psychologist who conducted the pretrial interview of T.M. Maddox argues that certain testimony given by the psychologist amounted to improper bolstering of T.M.'s credibility. There is no merit in this argument. The psychologist was qualified as an expert in the field of conducting forensic interviews of children in sexual abuse cases. She testified to her training and experience, which included conducting hundreds of such interviews. After the videotape of the interview was played to the jury, the prosecutor commented that T.M. had not given any specific dates on which events had happened, and the psychologist was asked whether that was uncommon. The psychologist responded that it is more uncommon for a

child (or for an adult) to be able to specify incident dates where, as here, there has been a recurrence of events over a prolonged period.

Improper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror. Here, the witness testified on the basis of her experience in forensic interviewing as to the ability of interviewees to recall certain things in certain situations. That was in no way a comment on an ultimate issue of fact. And the court was authorized to find that the conclusion drawn by the expert was beyond the ken of the jurors. Therefore, counsel was not ineffective in failing to object.

*Maddox v. State*, 275 Ga.App. 869, 622 S.E.2d 80, 82 (2005).

In *State v. Hilton*, 764 So.2d 1027 (La.Ct.App.2000), the Court of Appeal of Louisiana inculcated:

Cheri Staten, the director of the Jefferson Parish Children's Advocacy Center, was qualified as an expert in forensic interviewing in the area of child sexual abuse. She testified that she does forensic interviews for Washington Parish and explained that a forensic interview is an interview with children used to gather information, not to conduct therapy. The children are given an opportunity to talk and are asked general questions, without discussing the allegations of the abuse. She also indicated that she wears an earpiece so that law enforcement officers can speak to her while they monitor the interview.

*Id.* at 1033; *cf. Lena v. State*, 901 So.2d 227, 233 (Fla.Dist.Ct. App.2005) ("The record does not demonstrate the existence of a recognized field of expertise in forensic interviewing, such that a person can be qualified as an expert in it. It was ... perfectly permissible to present Ms. Silverman's educational background and work experience, but she should not have been presented to the jury as an expert in forensic interviewing.").

## D. The Extant Factual Record

In the instant case, the State called Herod to testify. Herod explained she began working in the victim's

assistance office for the Sumter County Sheriff's Department in 1998. She conducts forensic interviews of child victims and follows the victims through the court process. She declared:

A forensic interview is a term that is used when interviewing children and what it means is that it's a clean interview. It's an interview where you don't ask any leading questions or you don't assume anything. We have ... a forensic interviewing room where we bring the children in and conduct the interviews there and I do this for the sheriff's office and then I report my findings and make any recommendations that I have based on my interview and turn my findings over to the investigator that has been assigned that case.

. . . .

... Currently we conduct our interviews, I use the RATAC method, which there has been a movement nationwide because different agencies were using or doing different methods to interview children. The National Center for ... Prosecution [of Child Abuse] wanted to, came up with a plan ... [t]o standardize the interviewing process.

When Herod began to describe her training, Douglas objected and argued that Herod's training was not relevant. The trial court pointed out the State was eliciting "background information for purposes of qualifying the witness as an expert" and overruled the objection.

Herod articulated:

South Carolina was actually the second state that went through that training and I was involved with the first training class that happened in South Carolina, the finding words class and it taught the RATAC method and I graduated from that class in March of 2001 and have actually been, they have offered an advanced class for the graduates of that first class and I graduated from that in June of 2003 and the RATAC method that they teach is standard operating procedure for our office at this time.

The State offered Herod "as an expert witness in the field of forensic interview." Douglas objected that "there is [no] such field of expertise." The trial court excused the jury and held a hearing on the qualification of Herod.

During the in camera hearing, Herod stated she had interviewed child victims "of similar types of cases, including criminal sexual conduct and lewd act," hundreds of times. When asked if she had testified in court before, Herod responded: "I've testified in court many times, I've testified as an expert witness and been qualified by different courts as an expert witness in interviewing child sexual assault victims in [the circuit court] as well a[s] court[s] in federal jurisdiction and several times in family court." She explained the forensic interviewing method is widely used in law enforcement and is nationally recognized for interviewing child victims of sexual crimes. Herod received a week-long training in the RATAC method of forensic interviewing before she interviewed the victim. She received a second week of advanced training after she interviewed the victim.

Herod described the RATAC method she used to interview child abuse victims:

I introduce myself to the child after being briefed by the investigator requesting the interview, bring her into the interview room, in the interview room it's just me and the person that I'm interviewing present in that room, but there is a two way mirror and a sound system where the investigator can listen to the interview, that way I can get any input that I need from them or find out any more specific details that they need and there will be a point that I do that. The child and I then engage in the interview and ... we use the RATAC method, and RATAC is an acronym for each stage of the interview. The "R" being the rapport stage where I build rapport with the child and talk about school, family, whatever can make that child feel comfortable, also during that stage I go over the rules of the interview which is simply we talk about telling the truth, ... and I explain to her my role and who I work for and what I do and we talk about that this is a safe place and the importance of telling the truth and if the child agrees to those ground rules, we go on with the interview. After the rapport stage, and where we name family members and that type of stuff and I use drawings during that, in this case, I drew a couple of houses I think, because she was explaining her family to me and we put family members in that house, the next stage is the anatomy identification and we use a

drawing of an age appropriate, race appropriate boy and girl and that allows me to do a couple of things to see if she can differentiate gender, to see if she can name different body parts, and we name body parts to include eyes, nose and that allows me to know what the child calls, it's not a teaching, the interview process is not a teaching process, I'm not teaching her anything, and so I will refer to body parts by the same name that she does. After we identify the body parts on the anatomy identification section of the interview. The "T" is for the touch inquiry and by that we start opening up the dialogue about tell me some touches that you like, different responses will come from different children, some children like to be tickled, some children like to have their back scratched, some like hugs, and then after that I go into are there any places on your body that would not be ok for someone to touch and the child at that time will tell me parts of her body, the off-limit parts, the private parts or whatever. Then I will ask or I will transition into the part of the interview, has there ever been a time where anyone, keeping a true forensic interview, if she discloses at that point, that there has been touching by anyone, we go into the second "A" of the RATAC procedure which is the abuse scenario and that allows a child to disclose to me what has happened to her. After we have covered that, with as much detail as that child can give, with as many open ended questions from me, non-assuming questions from me, we end the interview on the "C" portion of the interview, which is the closure and at that point we talk about safety issues, that it's good to tell and I address any concerns that child has about what they've told during that interview and that's the basic interview that we do.

Herod stated she utilized the RATAC method in her forensic interview of the victim. After her interview with the victim, Herod met with Officer McGee and recommended that the victim "be taken for a medical exam at the Durant Center."

After the State proffered Herod's proposed testimony, Douglas objected to its admission on the grounds it was "hearsay, bolstering, and the prejudicial value outweighs the probative value." On cross-examination, Herod admitted she had a high school diploma, did not have a diploma from a university, was not a medical doctor, and the training she

received to be certified in the form of interview she specifically used on the victim was one week. When discussing her training, Herod declared:

> I had to have background and experience in interviewing child victims before I would have been accepted to enter into that training. The training itself for the initial course was a one week all day training session which incorporated the background as to the theory behind forensic interviewing and the method and then also a practical session where we actually had to conduct an interview.

Regarding the training she received, Herod emphasized that she had attended two weeks of courses and "had lots of experience in interviewing children and there have been other courses that [she had] been to dealing with interviewing children."

After the proffer, the State asserted "the fact of the question is her, basically her opinion that based upon her interview that further medical investigation was necessary." Douglas complained that "two weeks certification does not an expert make in the area of a legal procedure which we feel was created to bolster her testimony in the first place." The trial court concluded the evidence was admissible because "it will assist the trier of fact to determine a fact in issue and ... it specifically will assist them in determining if an assault of the nature described by the young lady took place and what she did, what this witness did as a result of her interview." The judge determined Herod was "qualified by knowledge, skill, experience, training and education."

Herod testified in detail in front of the jury as to her qualifications as an expert in forensic interviewing. Herod declared that upon completing the first RATAC training course, she was certified as a forensic interviewer using that method. When questioned about further training, Herod elucidated:

> I've been back for follow up courses and advance courses and there's a national newsletter that comes out every month that we get and we keep up with the different issues and case law, things that are going on nationwide regarding this interview process.

The judge then qualified Herod as an expert in the field of forensic interviewing.

Herod interviewed the victim on February 10, 2003 using the RATAC method. They "talked about a series of events that began in the summer and continued until right before Christmas." The State asked: "[B]ased on your interview under the RATAC method, was it your opinion if any follow up was necessary?" Herod replied: "Yes sir. It was my opinion that [the victim] needed to go to the Durant Center for a medical exam and that was the recommendation that I made in my report."

The trial court did not abuse its discretion in finding Herod had "acquired by study or practical experience such knowledge of the subject matter of [her] testimony as would enable [her] to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common knowledge." *State v. Henry,* 329 S.C. 266, 273, 495 S.E.2d 463, 466 (Ct.App.1997). Herod had previously been qualified in family court, circuit court and federal court as an expert witness in interviewing child sexual assault victims. She received specialized training on the RATAC method, which is used on a nationwide basis and is nationally recognized for interviewing child victims of sexual crimes. After completing the initial RATAC training course, Herod was certified as a forensic interviewer using that method. Herod receives a monthly national newsletter that informs her of current issues and case law regarding the RATAC method. The trial court had sufficient evidence that forensic interviewing was a recognized field. *See State v. Jones,* 273 S.C. 723, 259 S.E.2d 120 (1979); *see also In re A.H.,* 259 Ga.App. 608, 578 S.E.2d 247, 250 (2003) (rejecting claim that investigator was incompetent to conduct interview of child victim, noting he "employed a known method for interviewing child victims, the RATAC method").

### E. Harmless Error

Even if the trial court had erred, we would hold this error to be harmless.

Whether an error is harmless depends on the circumstances of the particular case. *In re Harvey,* 355 S.C. 53, 584

520

S.E.2d 893 (2003); *State v. Taylor*, 333 S.C. 159, 508 S.E.2d 870 (1998); *State v. Thompson*, 352 S.C. 552, 575 S.E.2d 77 (Ct.App.2003). No definite rule of law governs this finding. *State v. Gillian*, 360 S.C. 433, 602 S.E.2d 62 (Ct.App.2004). Rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. *State v. Mitchell*, 286 S.C. 572, 336 S.E.2d 150 (1985).

Error is harmless where it could not reasonably have affected the result of the trial. *In re Harvey*, 355 S.C. at 63, 584 S.E.2d at 897; *State v. Davis*, 364 S.C. 364, 613 S.E.2d 760 (Ct.App.2005). Where a review of the entire record establishes the error is harmless beyond a reasonable doubt, the conviction should not be reversed. *State v. Fletcher*, 363 S.C. 221, 609 S.E.2d 572 (Ct.App.2005); *Thompson*, 352 S.C. at 562, 575 S.E.2d at 83. Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained. *Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834 (1992).

Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard*, 303 S.C. 172, 399 S.E.2d 595 (1991); *State v. Adams*, 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). Thus, an insubstantial error not affecting the result of the trial is harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached. *State v. Bailey*, 298 S.C. 1, 377 S.E.2d 581 (1989); *Adams*, 354 S.C. at 381, 580 S.E.2d at 795. The admission of improper evidence is harmless where the evidence is merely cumulative to other evidence. *State v. Haselden*, 353 S.C. 190, 577 S.E.2d 445 (2003); *State v. Braxton*, 343 S.C. 629, 541 S.E.2d 833 (2001); *State v. Blackburn*, 271 S.C. 324, 247 S.E.2d 334 (1978); *State v. Weaverling*, 337 S.C. 460, 523 S.E.2d 787 (Ct.App.1999); *see also State v. Williams*, 321 S.C. 455, 469 S.E.2d 49 (1996) (instructing that error in admission of evidence is harmless where it is cumulative to other evidence which was properly admitted).

The only reasonable inference the jury could have drawn from Herod's testimony is that she believed the victim told the truth about being sexually assaulted. However, Saunders testified her examination revealed tearing and scarring consistent with past penetration. Douglas has not shown a reason-

able probability the jury's verdict was influenced by Herod's testimony.

## II. BOLSTERING

■ Douglas maintains Herod's testimony impermissibly bolstered the victim's testimony. We disagree.

■■ Initially, we note the State argues this issue is not preserved for our review. Unless an objection is made at the time evidence is offered and a final ruling made, the issue is not preserved for review. *See State v. Simpson,* 325 S.C. 37, 479 S.E.2d 57 (1996); *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993); *Bank v. North Carolina Mut. Life Ins. Co.,* 186 S.C. 394, 195 S.E. 649 (1938). A party must object at the first opportunity to preserve an issue for review. *State v. Aldret,* 333 S.C. 307, 509 S.E.2d 811 (1999); *State v. Williams,* 303 S.C. 410, 401 S.E.2d 168 (1991); *State v. Lopez,* 352 S.C. 373, 574 S.E.2d 210 (Ct.App.2002). Yet, this rule does not require defense counsel to harass the judge by making continued objections after the trial court has ruled upon the issue. *See Dunn v. Charleston Coca–Cola Bottling Co.,* 311 S.C. 43, 426 S.E.2d 756 (1993); *Long v. Norris & Assocs., Ltd.,* 342 S.C. 561, 538 S.E.2d 5 (Ct.App.2000); *State v. Holliday,* 333 S.C. 332, 509 S.E.2d 280 (Ct.App.1998); *State v. McDaniel,* 320 S.C. 33, 462 S.E.2d 882 (Ct.App.1995).

■ Here, Douglas objected to Herod's testimony and the trial court held an in camera hearing to qualify the witness. During the hearing, Douglas objected and argued Herod's testimony improperly bolstered the victim's testimony. The trial court overruled this objection. When the State moved the court to qualify the witness as an expert before the jury, Douglas renewed his objections. The trial court noted the objections "will run throughout the record." Therefore, Douglas properly preserved this issue for our review.

■ Improper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror. *Maddox v. State,* 275 Ga.App. 869, 622 S.E.2d 80 (2005).

In *State v. Barrett,* the trial court allowed a social worker "to testify to the details of what [a v]ictim [of sexual abuse] had told her concerning the incident." *Barrett,* 299 S.C. 485, 486, 386 S.E.2d 242, 243 (1989). On appeal, defendant argued this testimony impermissibly bolstered the victim's testimony. The supreme court explicated:

> Ordinarily, when a witness has not been impeached, evidence of prior consistent statements is inadmissible. To this rule is an exception in criminal sexual conduct cases. When the victim testifies, evidence from other witnesses that she complained of the sexual assault is admissible as corroboration of the incident; however, the evidence must be limited to the time and place of the assault, and may not include particulars or details.

*Id.* at 486–87, 386 S.E.2d at 243 (citations omitted). The court reversed the conviction because the social worker "testified extensively to details of the sexual abuse reported by Victim." *Id.* at 487, 386 S.E.2d at 243.

*State v. Jolly,* 304 S.C. 34, 402 S.E.2d 895 (Ct.App.1991), is instructive. In *Jolly,* a social worker testified only that the victim told her the defendant "messed with her." *Jolly,* 304 S.C. at 36, 402 S.E.2d at 896. The court of appeals distinguished *Barrett* and held that, because the social worker in *Jolly* did not provide extensive details of the incident, the testimony did not impermissibly bolster the victim's testimony. *Id.* at 39, 402 S.E.2d at 898.

In the case *sub judice,* Herod's testimony is less bolstering than in both *Barrett* and *Jolly.* Herod testified only about the time period in which the alleged events occurred, and opined that the victim needed a medical evaluation. Although the jury could infer Herod thought the victim told her the truth about being molested, Herod offered no testimony as to the alleged perpetrator or the particulars of the sexual abuse. Herod did not express her opinion as to whether or not the victim told her the truth during the interview.

Moreover, the testimony was not presented to bolster the victim's credibility, but as a measure to prevent a defense or argument that the victim's testimony was the result of police suggestiveness. The RATAC method was developed in response to concerns about child victims' testimony being taint-

ed by police suggestiveness, as exemplified by *State v. Michaels,* 136 N.J. 299, 642 A.2d 1372 (1994):

> [A] sufficient consensus exists within the academic, professional, and law enforcement communities, confirmed in varying degrees by courts, to warrant the conclusion that the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony concerning such events.

*Id.* at 1379.

The trial court correctly found Herod's testimony did not impermissibly bolster the testimony of the victim.

## III. RULE 403, SCRE

Douglas alleges the trial court erred in failing to exclude Herod's testimony "because its probative value was substantially outweighed by its unduly prejudicial effect." We disagree.

Rule 403, SCRE, provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*See also State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991). Unfair prejudice means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *State v. Sweat,* 362 S.C. 117, 606 S.E.2d 508 (Ct.App.2004). The determination of prejudice must be based on the entire record and the result will generally turn on the facts of each case. *State v. Fletcher,* 363 S.C. 221, 609 S.E.2d 572 (Ct.App.2005). A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances. *State v. McLeod,* 362 S.C. 73, 606 S.E.2d 215 (Ct.App.2004); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). We review a trial judge's decision regarding Rule 403 pursuant to the abuse of discretion standard and are

524

obligated to give great deference to the trial court's judgment. *McLeod,* 362 S.C. at 81–82, 606 S.E.2d at 220; *State v. Horton,* 359 S.C. 555, 598 S.E.2d 279 (Ct.App.2004).

Here, Douglas argues Herod's testimony impermissibly bolstered the victim's testimony and unfairly prejudiced Douglas. Herod's testimony did not impermissibly bolster the victim's testimony. Douglas has not offered any "exceptional circumstances" for this court to reverse the trial court's decision regarding the comparative probative value of Herod's testimony and its prejudicial effect on Douglas' case. The trial court properly admitted Herod's testimony pursuant to Rule 403, SCRE.

## IV. VICTIM IMPEACHMENT TESTIMONY

Douglas avers the trial court erred in not allowing him to impeach the victim with extrinsic evidence in the form of his mother's testimony.

The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Staten,* 364 S.C. 7, 610 S.E.2d 823 (Ct.App.2005). An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support. *State v. Irick,* 344 S.C. 460, 545 S.E.2d 282 (2001); *State v. Adkins,* 353 S.C. 312, 577 S.E.2d 460 (Ct.App.2003). In order for an error to warrant reversal, the error must result in prejudice to the appellant. *See* Rule 103, SCRE; *State v. Crocker,* 366 S.C. 394, 621 S.E.2d 890 (Ct.App.2005); *State v. Preslar,* 364 S.C. 466, 613 S.E.2d 381 (Ct.App.2005); *State v. McLeod,* 362 S.C. 73, 606 S.E.2d 215 (Ct.App.2004). Error without prejudice does not warrant reversal. *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App 2005).

Rule 613(b), SCRE, reads:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made, and is given the opportunity to explain or deny the statement. If a witness does not admit that he has made the prior

inconsistent statement, extrinsic evidence of such statement is admissible.

In the present case, the victim admitted to lying in the past, and generally admitted lying to Amelia Douglas, Douglas' mother. However, on cross-examination, defense counsel asked: "Do you remember not telling the truth to Ms. Douglas before right?" The victim replied: "I told the truth to her." Defense counsel inquired: "Do you remember telling her that you didn't cut a cord that you cut?" The victim responded: "No."

During the presentation of his case, Douglas called Amelia to testify. When Amelia began testifying as to an incident in which the victim lied about cutting a wire in the house but later admitted to cutting the wire, the State objected. The trial court sustained the objection, but allowed Douglas to proffer Amelia's testimony. The court ruled the testimony was not admissible as a prior inconsistent statement of a witness under Rule 613(b), SCRE, because the alleged prior statement was not inconsistent with the victim's testimony. Additionally, the trial court held the statement inadmissible under Rule 608(b), SCRE, which deals with specific instances of conduct. In his brief on appeal, Douglas argues the victim's "trial testimony was inconsistent with ... her prior inconsistent admission of lying to [Amelia]."

The trial court did not abuse its discretion in finding Amelia's testimony about what the victim told her was consistent with the victim's testimony at trial that she had lied to Amelia in the past. The judge properly found this was "not a matter under [Rule 613(b)] where it is extrinsic evidence of a prior inconsistent statement of a witness because the witness, and that is the victim in this case, did not make an inconsistent statement, she actually admitted ... she did ... not tell the truth sometimes." Further, the judge did not err in excluding the testimony pursuant to Rule 608(b).

Assuming arguendo the trial judge erred in prohibiting Amelia's testimony, we find such error was harmless.

Error is harmless where it could not reasonably have affected the result of the trial. *In re Harvey,* 355 S.C. 53, 584 S.E.2d 893 (2003); *State v. Davis,* 364 S.C. 364, 613

S.E.2d 760 (Ct.App.2005). Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard,* 303 S.C. 172, 399 S.E.2d 595 (1991); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App. 2003). Where a review of the entire record establishes the error is harmless beyond a reasonable doubt, the conviction should not be reversed. *State v. Pickens,* 320 S.C. 528, 466 S.E.2d 364 (1996); *State v. Fletcher,* 363 S.C. 221, 609 S.E.2d 572 (Ct.App.2005); *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002).

 If it did not contribute to the verdict obtained, then error is harmless beyond a reasonable doubt. *Fletcher,* 363 S.C. at 248, 609 S.E.2d at 586; *Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992). Thus, an insubstantial error not affecting the result of the trial is harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached. *State v. Bailey,* 298 S.C. 1, 377 S.E.2d 581 (1989); *Adams,* 354 S.C. at 381, 580 S.E.2d at 795.

Even if the judge erred in excluding this testimony, the error is harmless because the victim admitted to lying to Amelia in the past.

## *CONCLUSION*

We hold that FORENSIC INTERVIEWING is a recognized field of expertise. We rule that Herod is qualified as an expert in forensic interviewing by virtue of her knowledge, skill, experience, training, and education. The judge did not err in allowing Herod to testify as an expert witness in the area of forensic interviewing. Herod's testimony satisfied Rule 702, SCRE. The judge properly concluded Herod's testimony would explain to the jury Herod's role in the process and Herod's decision to recommend a medical examination.

We find the testimony of Amelia does not meet the test of the victim impeachment rule in South Carolina. The trial court correctly exercised discretion in excluding Amelia's testimony.

Accordingly, Douglas' conviction and sentence are **AFFIRMED.**

GOOLSBY and SHORT, JJ., concur.