22396

The STATE, Respondent, v. Mario MILIAN-HERNANDEZ, Appellant.

(336 S. E. (2d) 476)

Supreme Court

*Asst. Appellate Defender Stephen P. Williams* of *S. C. Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Att. Gen. Harold M. Coombs, Jr., Staff Atty. Carlisle Roberts, Jr.*, Columbia, and *Sol. Claude A. Taylor, Jr.*, Spartanburg, *for respondent.*

Heard Dec. 12, 1984.

Decided Oct. 29, 1985.

CHANDLER, Justice:

Appellant Mario Milian-Hernandez was convicted of two counts of assault and battery with intent to kill and received consecutive twenty year sentences. He appeals on the grounds that he proved insanity by a preponderance of the evidence.

We agree and reverse.

## FACTS

Appellant came to the United States in the Cuban boatlift of 1980 and was placed in a Cuban community in California. Shortly after his arrival, he was assaulted by a fellow Cuban. The police were summoned and killed the other man. After the dead man's brother threatened to kill him, Appellant purchased a gun.

Fearing for his safety, Appellant fled California for Chicago. From there he decided to go to Texas by bus, then chose a circuitous route from Chicago to Washington, D. C., through the Carolinas to Texas. His fears and suspicions that he was being followed by the dead man's brother were fueled by the presence of a Spanish speaking male on the bus from Chicago to Washington.

When the bus stopped in Charlotte for a brief layover, Appellant left the bus. He was approached by the Spanish speaking driver of a station wagon who asked Appellant his destination. This incident increased his agitation. Two passengers, later the victims of Appellant's assault, boarded the bus in Charlotte.

A Spanish speaking male, who rode beside Appellant from Washington, prepared a statement which was introduced by stipulation at trial. The affiant stated that Hernandez appeared normal until he reboarded the bus in Charlotte, acting mad and looking nervous. The Appellant thought the bus was being followed by the station wagon and asked the affiant to check on the car. The affiant reported that no station wagon was following the bus.

Shortly after the bus entered South Carolina, Appellant shot and seriously wounded the two men who had boarded the bus in Charlotte. The record reveals no motive for the shootings; Appellant and the two passengers were not acquainted and had not spoken with each other during the

trip. Appellant remained on the bus for approximately twenty minutes after the shooting and then fled into the woods. Before leaving the bus, he gave his baggage claim ticket to another passenger, requesting that person to pick the luggage up for him. Appellant surrendered to police officers the next morning.

Appellant was hospitalized. After approximately six months, his mental condition was stabilized through the administration of anti-psychotic drugs and he was found competent to stand trial. He was then moved to jail, but was returned to the hospital prior to trial because jail personnel were unable to properly administer his medication.

Three doctors from the State Hospital testified for the defense. Dr. Acevedo testified that Appellant was diagnosed as suffering from an acute paranoia disorder when admitted. He testified that Appellant stated he shot the passengers because he suspected they were in league with the dead man's brother. Appellant said he surrendered willingly to the police because he believed that they came to rescue him.

Dr. Acevedo would not express an opinion on Appellant's capacity under the M'Naughton Rule because he had not been asked by the court to do such a review. Dr. Martinez was also unable to express an opinion on his criminal responsibility. However, Dr. Galvarino who had examined Appellant under the Rule expressed his opinion that he did not have criminal responsibility during the shooting.

## ISSUE

The sole issue presented by this appeal is whether Appellant was entitled to a directed verdict of not guilty by reason of insanity.

There is a presumption that every criminal defendant is sane. This presumption relieves the State of the burden of proving sanity in every case. However, when the defendant offers evidence of insanity, the presumption disappears and it is encumbent on the State to present evidence from which a jury could find the defendant sane. Any evidence of sanity is sufficient to present a jury issue when the defendant relies on the affirmative defense of insanity.

The State argues that it presented sufficient evidence in its case-in-chief to make the question of Appellant's sanity a jury issue. It argues that the jury had two pieces of evidence to rebut Appellant's affirmative showing: (1) evidence of flight from the crime scene and (2) the presumption of sanity. This Court has long held that evidence of flight is evidence of guilty knowledge from which a jury may infer sanity. *State v. Thompson*, 278 S. C. 1, 292 S. E. (2d) 581, *cert denied*, 456 U. S. 938, 102 S. Ct. 1996, 72 L. Ed. (2d) 458 (1982). We adhere to this view; however, the circumstances of this Appellant's flight are such as to negate that permissible inference.

In our view, the only evidence in this case from which the jury could have found Appellant sane was the presumption of sanity. This case presents the first opportunity for this Court to address the question whether the presumption of sanity is in itself sufficient to create a jury issue when the defendant has presented evidence of insanity. We hold today it is not.

We hold that the trial judge erred in refusing to direct a verdict of not guilty by reason of insanity. The Appellant met his burden of proving insanity by a preponderance of the evidence. We caution the Bench and Bar that this opinion should not be read to require the State to produce expert testimony whenever the defendant does so. A jury may properly disregard expert testimony. *State v. Johnson*, 66 S. C. 23, 44 S. E. 58 (1903). We simply hold that the State presented no evidence of sanity in this case and that therefore no jury question was presented.

While reversing the convictions, we order that the remittitur in this case shall be stayed until custody of the Appellant has been transferred from the Department of Corrections to the Department of Mental Health. Upon notification by the Departments, the remittitur shall be sent down with instructions to enter a verdict of not guilty by reason of insanity.

Reversed.

GREGORY and HARWELL, JJ., concur.

LITTLEJOHN, C. J., and NESS, J., dissenting.

NESS, Justice:

I concur in the majority's discussion of the burden of proof in insanity cases, but I disagree with the majority's finding that there was no evidence of appellant's sanity at the time of the crimes.

The evidence presented by the State indicated that appellant exhibited no abnormal behavior during the bus ride from Washington to Charlotte. The witness who gave this testimony sat next to appellant during the bus ride from Washington, D. C. to Charlotte, and engaged in conversation with appellant. The men conversed in Spanish, their native language. The witness had some additional conversation with appellant following the shooting.

In my opinion, this testimony was some evidence of appellant's sanity at the time of the shooting. In light of this testimony, I believe the trial judge properly found that the issue of appellant's sanity was for the jury.

Additional evidence of appellant's sanity was his flight from the scene of the crime. *State v. Thompson, supra.* The majority dismisses this evidence because of the circumstances surrounding appellant's flight. It was for the jury to evaluate the circumstances and decide in light of other testimony, what weight should be given this evidence.

The majority asserts that its opinion does not require the State to produce expert testimony on the issue of sanity whenever the defendant does so. While I concede the majority has not established a *per se* rule, it has achieved the same result when it infers that lay testimony of a defendant's sanity, similar to that introduced here, is no evidence of sanity.

I would affirm the conviction.

LITTLEJOHN, C. J., concurs.