578 S.E.2d 247 (2003)
259 Ga. App. 608
In the Interest of A.H., a child.
No. A02A1817.
Court of Appeals of Georgia.
February 12, 2003.
*248 Almand & Wiggins, O. Hale Almand, Jr., Eastman, Amy R. Reese, for appellant.
Richard G. Milam, District Attorney, Jason S. Johnston, Assistant District Attorney, for appellee.
SMITH, Chief Judge.
A.H., a 14-year-old boy, was adjudicated delinquent after being found to have committed an offense which, if committed by an adult, would be child molestation. He appeals, raising three enumerations of error. We find no merit in any of these, and we affirm.
Construed to support the juvenile court's judgment, the evidence presented at the adjudicatory hearing showed that A.H.'s mother and the victim's mother were friends. The two families socialized often. The four-year-old victim, her mother, her brother, and her three-year-old sister were at a swimming party at the home of A.H. The victim testified that during the party she went inside the house to use the bathroom. While she was there, A.H. came in, laid her on the floor, *249 pulled her bathing suit down, and touched her vagina with his hand twice. Afterward, she watched cartoons, and A.H. read her a book in his bedroom. The day after the pool party, the victim's younger sister was lying down at home, and their mother observed the victim open her sister's legs and tell her she was going to "tickle your hiney like [A.H.] tickled me." When her mother questioned her, the victim told her that A.H. had "tickled me and then he hurt" her in her "hiney." The mother then called the authorities. The victim was interviewed by the Monroe County Sheriff's Office's child abuse investigator, and the interview was videotaped. During the interview, which was admitted without objection at trial, the victim made a spontaneous statement that A.H. touched her "hiney" and it hurt. She indicated on an anatomically correct doll how A.H. had touched her. A.H. was then arrested. He was interviewed with his mother present, and the interviewer found numerous inconsistencies in his statement.
1. A.H. contends the juvenile court erred by considering the taped interview of the victim and her testimony at trial, because it was clear they were unreliable as to their truth. We do not agree.[1]
OCGA § 24-3-16 permits the admission into evidence of an out-of-court statement about sexual contact or physical abuse made by a child under 14 if the child is available to testify "and the court finds that the circumstances of the statement provide sufficient indicia of reliability." The factors to consider in determining reliability include the conditions under which the statement was made, the statement's spontaneity, the child's age, demeanor, and physical and mental condition, the child's general credibility, whether any threats or promises were made, whether any involvement of drugs or alcohol was present, whether any coaching took place, and the consistency between repeated out-of-court statements. Heard v. State, 221 Ga.App. 166, 167-168(2), 471 S.E.2d 22 (1996). These factors cannot be applied in mechanical fashion, but in the "manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness." Gregg v. State, 201 Ga.App. 238, 241(3)(b), 411 S.E.2d 65 (1991). Underlying all these factors is the question of "whether the child declarant was particularly likely to be telling the truth when the statement was made". (Citation and punctuation omitted.) Rolader v. State, 202 Ga.App. 134, 140(1), 413 S.E.2d 752 (1991). A.H. relies upon Rolader, in which we concluded that the victim's statement was not reliable and should not have been admitted. But here, unlike the victim in Rolader, the child was not subjected to repeated questioning by different people, nor was evidence presented that she was coached. A.H. asserts that because several days had passed between the alleged incident and the interview, during which time the victim was talking with family members, and because there were minor inconsistencies in her statement, it "is very reasonable to assume that someone must have been discussing the issue and coaching her as to what to say."
But the facts here are different from those in Rolader in several ways. Here, the interviewer did not talk to the victim prior to the interview. And the three-day period between the incident and the interview was far shorter than the intervening time in Rolader, which was more than three months. Here, the victim's mother called the police almost immediately after discovering the molestation, but because it was a weekend, the interview did not take place until Monday. Moreover, the fact that an interview takes place some time after the incident does not, without more, make the statement unreliable. Gregg, supra.
The facts here are similar to those in Tucker v. State, 208 Ga.App. 441, 430 S.E.2d 811 (1993). The victim was present at trial, testified, and was subject to cross-examination by A.H. He had the opportunity to examine the victim regarding her memory of and the circumstances surrounding the out-of-court statement and to allow her demeanor to be judged regarding those circumstances. *250 "This procedure provided an additional safeguard to appellant's right of fair trial, and provided appellant full opportunity for confrontation." (Citations and punctuation omitted.) Id. at 443, 430 S.E.2d 811. Here, as in Tucker, viewing the totality of the circumstances surrounding the declaration, a sufficient basis exists to conclude that the required degree of reliability was established for its admissibility. Id.
A.H. also asserts that the investigator did not have proper training in handling a child interview appropriately and that he did not employ appropriate techniques. This assertion lacks merit. The investigator's primary duty was to investigate child abuse complaints, and he had taken specialized training courses in interviewing children in sex abuse cases. He conducted the interview in a specialized, "child-friendly" environment. Only he and the child were present, and he employed a known method for interviewing child victims, the RATAC method, described by a witness in Baker v. State, 252 Ga.App. 238, 239, 555 S.E.2d 899 (2001). This acronym stands for gaining rapport with the child, anatomy identification, touch inquiry, abuse scenario, and closure. Id. Although the investigator may not have been familiar with the specifics of the named protocol, he followed each of the steps in this case. After establishing initial rapport with the child victim, he used drawings to determine anatomy identification, and he questioned the child about good touch and bad touch. He then inquired specifically about the alleged abuse, before ending the interview.
Reviewing all the factors to be considered, we conclude that the juvenile court did not abuse its discretion in admitting the videotape or considering the child's testimony.
2. A.H. maintains the evidence was insufficient to warrant a guilty verdict. We do not agree.
He argues that the only evidence showing his guilt was the testimony of the victim and points to his previous argument that her testimony was unreliable. He cites various cases in which this court determined that the evidence was insufficient to support the verdict, all of which are completely distinguishable from this case. We have already determined that the victim's testimony was reliable. Taking her testimony as true, as we must, it alone was more than ample to support the finding of guilt. Callahan v. State, 256 Ga.App. 482, 484(1), 568 S.E.2d 780 (2002). Further, the victim's mother's testimony supported the allegation of abuse, and the victim's videotaped statement corroborated her trial testimony. This evidence was sufficient under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
3. A.H. asserts that the juvenile court judge should have recused herself from the case because of her "contempt" for home schooling. This assertion is apparently based upon remarks made by the trial judge at the dispositional hearing, which was approximately two months after adjudication. The transcript does not, however, show any bias, much less "contempt." It shows only that the judge attempted to clarify the exact terms of A.H.'s probation, because it was unclear whether he would be moving to Texas or remaining in Georgia. The only mention of home schooling at the adjudicatory hearing was made when the trial court questioned A.H.'s brother regarding where he went to school and the brother replied that last year he was home schooled. The judge then asked whether A.H. was also home schooled, and the brother replied that he had been before 2001. At the dispositional hearing, when reading the terms of A.H.'s sentence to him, the judge stated: "You'll attend public school is what this says. Are you attending public school in Texas? I know we had some conversations about home schooling versus public school. So you are attending public school now?" This was included in a recitation of all the terms of the probation, and it does not reveal an "obvious" bias, as contended by A.H.
Even if this could be considered evidence of bias, it is insufficient under OCGA § 15-1-8 and Canon 3(E) of the Georgia Code of Judicial Conduct to warrant disqualification. The statute provides for disqualification in three situations: when a judge has a pecuniary interest, when the judge is related to a party, and when the judge has been *251 of counsel or has presided in a lower court in the same case. Unless they display a deep antagonism that would make a fair trial impossible, opinions of the judge on the basis of facts introduced in the proceedings or prior proceedings do not constitute grounds for disqualification based upon bias or impartiality. Liteky v. United States, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). We find no error here.
Judgment affirmed.
ELDRIDGE and ELLINGTON, JJ., concur.
NOTES
[1] As noted above, A.H. did not object at trial to the admission of the tape. Although this leaves nothing for appellate review, we have nevertheless reviewed this contention. See Lindo v. State, 218 Ga.App. 756, 759(3), 463 S.E.2d 148 (1995).