671 S.E.2d 606

The STATE, Respondent,

v.

William R. DOUGLAS, Petitioner.

No. 26577.

Supreme Court of South Carolina.

Heard Sept. 16, 2008.

Decided Jan. 12, 2009.

Deputy Chief Appellate Defender for Capital Appeals Robert M. Dudek, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General David Spencer, all of Columbia, and Cecil Kelly Jackson, of Sumter, for Respondent.

500

Justice WALLER:

We granted certiorari to review the Court of Appeals' opinion in *State v. Douglas*, 367 S.C. 498, 626 S.E.2d 59 (2006). We affirm, in result, and reverse in part.

## FACTS

Petitioner, William R. Douglas, was convicted of committing a lewd act on a minor. The Victim, who was 10 years old at the time of trial, testified she was molested by Douglas when she was 7 years old. When the Victim told her Grandmother about the abuse one year later, she was taken to see Gwen Herod, the Sumter County Victim's Assistance Officer.

Herod testified at trial that she conducts "forensic interviews" with child victims and follows the children through the court system. Douglas objected to her qualification as an expert, contending there is no such field of expertise. Douglas also asserted Herod's testimony improperly bolstered Victim's testimony and was unduly prejudicial. The court qualified Herod as an expert, finding her testimony relevant and admissible.

Herod testified before the jury that she does "forensic interviewing" using the RATAC method.[1] Herod testified that she had testified in court several times before. Although she did not have a college degree, she had attended a 40–hour training course on forensic interviewing, and had completed two weeks of training classes. She had been a victim's advocate for the solicitor's office for eleven years, and had interviewed hundreds of victims. According to Herod, the RATAC method is used nationwide and is known as forensic interviewing of children.

Herod testified before the jury about the RATAC method, stating:

During the rapport stage, I'm building a rapport with this child, we are talking about school or things that she enjoys,

---

1. Herod testified R–A–T–A–C was an acronym for Rapport; Anatomy; Touch; Abuse Scenario; Closure.

I'm introducing myself to her, telling her what my role is and going over the rules of the interview, we talk a lot about telling the truth and telling a lie and we make an agreement with each other that I will tell her the truth and that she will tell me the truth, if we get past that, if the child agrees to do that, we go on to name, I find out about their family

. . .

Herod then testified she utilized the RATAC method with Victim in this case, and that as a result, she received information which led her to conclude a follow up was necessary, and that the victim needed to go to the Durant Center for a medical evaluation.

The Court of Appeals affirmed the trial court's qualification of Herod as an expert in the field of forensic interviewing. The Court of Appeals further found that, in any event, Herod's testimony was harmless and did not improperly bolster Victim's testimony.

## ISSUE

Did the Court of Appeals err in affirming the qualification of Herod as an expert in the field of forensic interviewing, and in affirming admission of her testimony?

## DISCUSSION

The Court of Appeals held "the trial court did not abuse its discretion in finding Herod had 'acquired by study or practical experience such knowledge of the subject matter of [her] testimony as would enable [her] to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common knowledge.'" *Douglas,* 367 S.C. at 519, 626 S.E.2d at 70. (Internal citation omitted). The Court of Appeals also found the trial court had sufficient evidence that forensic interviewing was a recognized field, and that, in any event, any error was harmless. Under the facts presented here, we find it was unnecessary for Herod to be qualified as an expert.

Pursuant to Rule 601, SCRE, every person is competent to be a witness unless otherwise provided by statute or the rules. Rule 602, SCRE, prohibits a witness from testifying to mat-

ters unless evidence is introduced sufficient to demonstrate the witness has personal knowledge. Rule 602 is subject to the provisions of Rule 703, SCRE, which provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Lay witnesses are permitted to offer testimony in the form of opinions or inferences if the opinions or inferences are rationally based on the witness' perception, and will aid the jury in understanding testimony, and do not require special knowledge. Rule 701, SCRE; *State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996).

Here, Herod testified she had been employed as the Sumter County victim's assistance officer since 1998. Although she did not have a college degree, she had attended a 40–hour training course on forensic interviewing, and had completed two weeks of training classes. She had interviewed hundreds of victims and had testified in court several times before. Herod testified she had been back for follow up courses and advanced courses and that there was a monthly national newsletter in order to enable her to keep up with things going on nationwide regarding the forensic interviewing process.

Herod also testified as to her utilization of the R–A–T–A–C method to establish a rapport with child victims, and testified as to her interview with the victim in this case. Ultimately, Herod testified that based on the interview, it was her opinion the victim needed to go to the Durant Center for a medical exam.

We find the testimony given by Herod in the present case simply was not required to be presented by an expert witness.[2] Herod testified only as to her personal observations

---

2. We are not unmindful that numerous states in recent years have upheld the qualification of expert witnesses in the field of forensic interviewing. *See, e.g., Kilby v. Commonwealth,* 52 Va.App. 397, 663 S.E.2d 540 (2008); *Golden v. State,* 984 So.2d 1026 (Miss.Ct.App.2008); *Lattimer v. State,* 952 So.2d 206, 2006 WL 1073190 (Miss.Ct.App.2006), *cert. denied* 951 So.2d 563 (Miss.2007); *Mooneyham v. Mississippi,* 915

and experiences, and her interview with the Victim in this case. Accordingly, we find it was unnecessary for the trial court to have qualified her as an expert. However, although Herod did not need to be so qualified in this case, we nonetheless affirm the result reached by the Court of Appeals, because Douglas suffered no prejudice either as a result of Herod's testimony or by her qualification as an expert.

Douglas contends, in part, that Herod's testimony was unduly prejudicial inasmuch as the jury was likely to give her testimony undue weight simply because of her qualification as an expert. Such a contention is untenable. The same tests which are commonly applied in the evaluation of ordinary evidence are to be used in judging the weight and sufficiency of expert testimony. *Anderson v. Campbell Tile Co.*, 202 S.C. 54, 24 S.E.2d 104 (1943). As with any witness, the jury is free to accept or reject the testimony of an expert witness. *State v. Milian–Hernandez*, 287 S.C. 183, 186, 336 S.E.2d 476, 478 (1985). The fact that Herod was qualified as an expert did not require the jury to accord her testimony any greater weight than that given to any other witness.

Douglas further asserts that Herod's testimony could have been construed by the jury as vouching for Victim's veracity, such that it should have been excluded under Rule 403, SCRE, because its prejudicial impact outweighed its probative value. We disagree. Initially, we note that the Court of Appeals concluded that "[t]he only reasonable inference the jury could have drawn from Herod's testimony is that she believed the victim told the truth about being sexually assaulted." 367 S.C. at 520, 626 S.E.2d at 71. This was error. Herod never stated

---

So.2d 1102 (Miss.Ct.App.2005); *State v. Speers*, 209 Ariz. 125, 98 P.3d 560, 566 (Ct.App.2004); *In re A.H.*, 259 Ga.App. 608, 578 S.E.2d 247 (2003); *State v. Thompson*, 71 Conn.App. 8, 799 A.2d 1126 (2002); *Siharath v. State*, 246 Ga.App. 736, 737–738, 541 S.E.2d 71 (Ga.App. 2000) (no abuse of discretion in court qualifying witness as an expert in forensic evaluation); *Louisiana v. Hilton*, 764 So.2d 1027 (La.Ct.App. 2000). Under Rule 702, SCRE, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *See Baggerly v. CSX Transportation, Inc.*, 370 S.C. 362, 635 S.E.2d 97 (2006). Although there may be a case in which qualification of an expert in this field is proper, we find no such necessity in the present case.

she believed Victim; she did not even state the Victim in this case agreed to tell her the truth, and she gave no indication concerning Victim's veracity. Herod testified only that, in conducting forensic interviews and building a rapport with a child, they talk about things. She stated, "I'm introducing myself to her, telling her what my role is and going over the rules of the interview, we talk a lot about telling the truth and telling a lie and we make an agreement with each other that I will tell her the truth and that she will tell me the truth, if we get past that, if the child agrees to do that, we go on." There is no evidence whatsoever that Herod believed the Victim to be telling the truth. Accordingly, the Court of Appeals' holding that the only reasonable inference is that Herod believed Victim was telling the truth is reversed.

Moreover, the only **opinion** given by Herod was that she concluded Victim needed a medical exam. A pediatric nurse practitioner thereafter examined Victim and determined she had vaginal tearing and scarring consistent with past penetration. In light of this evidence, there is no conceivable prejudice to Douglas from Herod's testimony. *Accord State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993) (probative value of the rape trauma evidence outweighed prejudicial effect).

## CONCLUSION

Given the nature of Herod's testimony, which was based upon her own personal observations and discussions with child victims, we find it was unnecessary to qualify her as an expert in this case. Herod testified to the manner in which she conducts interviews, and testified as to her recommendation upon interviewing the Victim in this case. This testimony simply did not need to be in the form of expert testimony. Accordingly, to the extent the Court of Appeals upheld the qualification of Herod as an expert in this case, its opinion is reversed. However, because Herod's testimony did not vouch for the veracity of the Victim, and was not prejudicial to Douglas, we affirm the result reached by the Court of Appeals.

**REVERSED IN PART; AFFIRMED IN RESULT.**

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES, dissenting:

I agree with the majority that the Court of Appeals erred in upholding the qualification of Herod. However, because I find that Herod's testimony was prejudicial to the defendant, I respectfully dissent, and would remand for a new trial.

In my opinion, it was not only unnecessary but improper for the circuit court to qualify Herod as an expert witness. This Court's jurisprudence and Rule 702 of the South Carolina Rules of Evidence emphasize the role of the trial court as the gatekeeper in determining, among other things, whether the expert's testimony consists of scientific, technical, or specialized knowledge that will assist the trier of fact. *Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 658 S.E.2d 80 (2008); Rule 702, SCRE. In my opinion, while much of Herod's factual testimony was admissible, it did not assist the jury in assessing matters beyond its common knowledge and was therefore not proper expert testimony.

Herod's testimony went to an ultimate issue for the jury: the victim's credibility. Herod testified that in applying the RATAC method, she and the victim "talk a lot about telling the truth and telling a lie and we make an agreement with each other that I will tell her the truth and that she will tell me the truth" and "if the child agrees to do that" Herod continues the interview. Herod testified that after concluding the interview, she determined "that [the victim] needed to go to the Durant Center for a medical exam...." I agree with the Court of Appeals that the only reasonable conclusion to be drawn from Herod's testimony is that, based upon her training, she believed that the victim was being truthful. Juries do not require the assistance of human "truth detectors" in assessing the credibility of testimony.

I cannot agree with the majority that qualifying Herod as an expert was harmless. As in many CSC cases, this case turned primarily on the veracity of the victim. In the instant case, while physical evidence indicated that the victim had

been abused, no physical evidence other than the testimony of the victim connected Petitioner to the crime. Notwithstanding that expert testimony is to be assessed utilizing the same tests of credibility applied to that of non-expert witnesses, qualification as an expert clothes the witness with an air of authority that does not attach to "ordinary" witnesses. In his closing argument, counsel for the State noted "what this comes down to is believability and credibility" and contrasted his "expert" witnesses with witnesses presented by the defense.[3] Given the importance of credibility in this case, Herod's testimony in this regard was not harmless. *See State v. Ellis*, 345 S.C. 175, 178, 547 S.E.2d 490, 492 (2001) ("An officer's improper opinion which goes to the heart of the case is not harmless.").

For the reasons given above, I respectfully dissent.

---

3. In his closing argument, counsel for the State argued: "what this comes down to is believability and credibility. What's believable, the testimony of that little girl and what she told you here in this courtroom, followed up with an expert in interviewing and followed up with an expert in medical examination and confirmed by her grandmother. That's the evidence, not mom who gets on the stand who doesn't ever say anything about this Terry guy and the fact that she was gone to church and other places or James Wandtke, the best friend who['s] here to help my buddy out. . . ."