# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Mark Baker, Petitioner.

Appellate Case No. 2010-172951

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Sumter County
The Honorable Howard P. King, Circuit Court Judge

---

Opinion No. 27497
Heard November 15, 2012 – Filed February 11, 2015

---

## REVERSED

---

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., all of Columbia and Solicitor Ernest Adolphus Finney, III, of Sumter, for Respondent.

---

**JUSTICE BEATTY:** Mark Baker was convicted of four counts of committing a lewd act upon a minor.[1] The Court of Appeals affirmed. *State v. Baker*, 390 S.C. 56, 700 S.E.2d 440 (Ct. App. 2010). Following the denial of his petition for rehearing, Baker petitioned this Court for a writ of certiorari to review the decision. We granted the petition to analyze whether: (1) the trial judge erred in refusing to quash the indictments, which alleged the offenses occurred over a six-year time frame; and (2) qualifying a witness as an expert in forensic interviewing. We reverse Baker's convictions as we hold the indictments were unconstitutionally overbroad.[2]

## I.  Factual / Procedural History

In October 2004, Victim Two, Baker's youngest niece, informed her mother that "Uncle Mark was messing with" her older sister, Victim One. At that time, Victim Two denied that Baker had molested her.

On October 22, 2004, Baker was arrested on four counts of committing a lewd act upon a minor and one count of criminal sexual conduct with a minor in the second degree ("CSC"). At that time, the arrest warrants alleged the conduct involving Victim One occurred between:  May 1, 2002 until September 1, 2002;

---

[1]  *See* S.C. Code Ann. § 16-15-140 (2003) ("It is unlawful for a person over the age of fourteen years to wilfully and lewdly commit or attempt a lewd or lascivious act upon or with the body, or its parts, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or of the child."). We cite to the code section in effect at the time of the alleged offenses. However, we note this code section was repealed on June 18, 2012.

[2]  Based on our holding, it is unnecessary to address Baker's remaining issue regarding the qualification of the forensic interviewer as an expert witness. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal). However, we recently held that it is improper to qualify a forensic interviewer as an expert witness. *See State v. Kromah*, 401 S.C. 340, 357 n.5, 737 S.E.2d 490, 499 n.5 (2013) ("[W]e state today that we can envision no circumstance where [a forensic interviewer's] qualification as an expert at trial would be appropriate. . . . Such subjects, while undoubtedly important in the investigative process, are not appropriate in a court of law when they run afoul of evidentiary rules and a defendant's constitutional rights.").

May 1, 2003 until September 1, 2003; and June 1, 2004 until June 20, 2004. In January 2005, a Sumter County grand jury indicted Baker for the charges identified in the arrest warrants. In June 2006, as the case was coming up for trial, Victim Two came forward with a separate allegation that Baker abused her in 2002. In July 2006, Baker was indicted for committing a lewd act upon a minor for the claim made by Victim Two.

However, after Victim One and Victim Two viewed photographs of a visit to Sumter in their aunt's scrapbook, Victim One recalled that the abuse began before the birth of her youngest sister in October 1998. Victim Two also testified that Baker abused her in 1998 before the birth of her youngest sister. Subsequently, the State presented a second set of indictments to the grand jury that alleged the lewd acts involving Victim One occurred between June 1, 1998 and September 1, 2004. The timing of the CSC charge remained the same. Additionally, the indictment containing the allegation involving Victim Two was amended to state that she was molested between June 1, 1998 and September 1, 1998 instead of 2002. On October 26, 2006, the grand jury true billed the amended indictments.

On November 13, 2006, the case was called for trial. Prior to trial, Baker moved to quash the indictments on the ground they were unconstitutionally overbroad and vague. Baker explained that his ability to present a defense was hindered as the "broad brush [of the indictments] is not just summers of three years but really six and a half to seven years with no specificity." The trial judge denied the motion, finding the indictments were sufficient despite the lack of specific dates because the dates were not an essential element of the charges.

Ultimately, the jury convicted Baker of the four counts of committing a lewd act upon a minor involving Victim One, but acquitted him of the fifth count of committing a lewd act upon a minor and CSC. The judge sentenced Baker to an aggregate sentence of thirty years' imprisonment.

On appeal, the Court of Appeals affirmed Baker's convictions. *State v. Baker*, 390 S.C. 56, 700 S.E.2d 440 (Ct. App. 2010). In so ruling, the court found the indictments sufficient as time was not a material element of the charged offenses, the time period covered by the indictments occurred prior to the return of the indictments by the grand jury, and the indictments clearly identified the elements of the offenses and substantially tracked the statutory language so that the nature of the charged offenses could be easily understood. *Id.* at 62-64, 700 S.E.2d at 442-44. This Court granted Baker's petition for a writ of certiorari pursuant to Rule 242(a) of the South Carolina Appellate Court Rules.

## II.    Standard of Review

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001) (citations omitted). "We are bound by the trial court's factual findings unless they are clearly erroneous." *Id.* at 6, 545 S.E.2d at 829.

## III.    Discussion

Baker argues the Court of Appeals erred in affirming the circuit court judge's denial of his motion to quash the indictments.  He contends the indictments were unconstitutionally overbroad and vague as the indictments alleged the offenses occurred at an unspecified time over a six-year period.  As a result, Baker claims it was "virtually impossible to try and defend against accusations spanning such a vast period of time."[3]

An indictment is a critical document in criminal defense preparation that is grounded in constitutional and statutory principles.  *See* S.C. Const. art. I, § 11 ("No person may be held to answer for any crime the jurisdiction over which is not within the magistrate's court, unless on a presentment or indictment of a grand jury of the county where the crime has been committed . . . ."); S.C. Code Ann. § 17-19-10 (2014) ("No person shall be held to answer in any court for an alleged crime or offense, unless upon indictment by a grand jury . . . .").  As we explained in *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005):

> The indictment is the charge of the state against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation.  When that indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him.  *He may question* the propriety of the accusation, *the manner in which it has been presented*, the source from which it proceeds, and have these matters promptly and properly determined; or, waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge.  If he omits the former, and chooses the latter, he ought not, when defeated on the latter, --when found guilty of the crime charged,

---

[3] Baker makes no assertion that the indictments failed to correctly identify the statutory elements of the offense.  Accordingly, our analysis is confined to the narrow issue of whether the six-year time frame was unconstitutionally overbroad.

--to be permitted to go back to the former, and inquire as to the
manner and means by which the charge was presented.

*Id.* at 102, 610 S.E.2d at 499-500 (citations omitted) (emphasis added).

If a defendant raises a timely challenge to the sufficiency of an indictment,
the reviewing court is charged with:

determining whether (1) *the offense is stated with sufficient certainty
and particularity* to enable the court to know what judgment to
pronounce, and *the defendant to know what he is called upon to
answer **and** whether he may plead an acquittal* or conviction thereon;
and (2) whether it apprises the defendant of the elements of the
offense that is intended to be charged.

*Gentry*, 363 S.C. at 102-03, 610 S.E.2d at 500 (emphasis added). "In determining
whether an indictment meets the sufficiency standard, the trial court must look at
the indictment with a practical eye in view of all the surrounding circumstances."
*State v. Tumbleston*, 376 S.C. 90, 97, 654 S.E.2d 849, 853 (Ct. App. 2007). In
doing so, "one is to look at the 'surrounding circumstances' that existed pre-trial, in
order to determine whether a given defendant has been 'prejudiced,' i.e., taken by
surprise and hence unable to combat the charges against him." *State v. Wade*, 306
S.C. 79, 86, 409 S.E.2d 780, 784 (1991).

In reviewing Baker's appeal, we focus our attention on *Gentry* as it is the
seminal case in analyzing the sufficiency of an indictment. Specifically, *Gentry*
sets forth two requirements that are relevant and dispositive in the instant case.
The first being a defendant's right to question the manner in which the accusation
has been presented, which Baker has done. The second, and most important here,
is the Court's determination as to whether the offense is stated with sufficient
certainty and particularity to enable the defendant to know what he is called upon
to answer and whether he may plead an acquittal.

Examining the indictments in the instant case in view of all the surrounding
circumstances, we find Baker was prejudiced as he was undoubtedly taken by
surprise and significantly limited in his ability to combat the charges against him.
Simply stated, there was no way for Baker to know "whether he [could] plead an
acquittal." *Gentry*, 363 S.C. at 103, 610 S.E.2d at 500.

Approximately two weeks before trial, the State presented Baker's counsel
with new indictments notifying Baker that he was being charged with offenses that
allegedly occurred between June 1, 1998 and September 1, 2004; however, no

temporal limitation is identified in the indictments.  Prior to that date, Baker had prepared a defense over the course of a year based on the original indictments that alleged the criminal offenses were committed during the summers of 2002, 2003, and 2004.  Thus, as a result of the new indictments, Baker was required to research and defend against events that occurred over a continuous six-year period as opposed to three identifiable summers.  Despite the significantly expanded time frame, the new indictments were no more specific than the original indictments.

Due to the State's belated presentation of the new indictments, Baker was given a mere two weeks to complete such an arduous task.[4]  In addition to the time constraints, Baker's counsel noted the defense was hampered as Baker's employment records prior to July 2000 had been destroyed and, thus, he could not adequately establish Baker's whereabouts during the time frame identified in the indictments.  Aside from this concrete example of prejudice, we are unable to discern how any defendant could effectively defend himself against a six-year time frame.  More specifically, the only complete defense would be that of an alibi.  As this Court has stated:

> The literal significance of the word 'alibi' is 'elsewhere'; as used in
> criminal law, it indicates that line of proof by which an accused
> undertakes to show that because he was not at the scene of the crime
> at the time of its commission, having been at another place at the time,
> he could not have committed the crime.  In other words, by an alibi
> the accused attempts to prove that he was at a place so distant that his

---

[4]  The dissent assigns error to our analysis regarding the requirements for a sufficient indictment.  Specifically, the dissent claims that we erroneously conflate the "concepts of *notice* with *preparation*."  Although we disagree with the dissent's assignment of error to our analysis, we acknowledge that we discuss the concepts of notice and preparation in tandem.  We believe this is the correct treatment of these concepts as the notice function of an indictment necessarily includes an assessment of whether an accused has the opportunity to prepare a defense.  More specifically, a sufficient indictment must do more than merely recite the elements of the offense charged.  As previously stated, the indictment must also contain sufficient factual allegations to permit the accused to know whether he may plead an acquittal or conviction thereon.  *Gentry*, 363 S.C. at 102-03, 610 S.E.2d at 500.  Thus, we believe that notice and preparation are inextricably linked concepts as "[f]airness and due process require that a criminal defendant receive sufficient notice of the charges against him to enable him to prepare a defense." *In re Corey B.*, 291 S.C. 108, 109, 352 S.E.2d 470, 470 (1987).

participation in the crime was impossible. *To be successful, his alibi must cover the entire time when his presence was required for accomplishment of the crime*. To establish an alibi, the accused must show that he was at another specified place at the time the crime was committed, thus making it impossible for him to have been at the scene of the crime. It is not enough for the accused to say that he was not at the scene and must therefore have been elsewhere. The latter statement does not constitute an alibi. And since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all.

*State v. Robbins*, 275 S.C. 373, 375, 271 S.E.2d 319, 320 (1980) (*quoting* 21 Am. Jur. 2d *Criminal Law* § 136 (emphasis added)). Although the solicitor indicated that Baker did not submit an alibi defense, it is understandable as it would have been impossible for him to produce evidence of an alibi that would cover a six-year period.

Given the expansive time frame and lack of specificity as to this time frame, we can only conclude Baker was prejudiced by the defects in the indictments. Although we recognize the difficulty the prosecution faces in identifying exact dates in child sexual abuse cases, the class of criminal case should not translate into an exception that operates to circumvent constitutional and statutory principles.

Accordingly, we hold the trial judge erred in refusing to quash the indictments as the non-specific, six-year period covered in the indictments was unconstitutionally overbroad because it lacked specificity as to when the alleged acts occurred. It is axiomatic that an indictment must include more than the elements of the charged offense. Therefore, we reverse Baker's convictions.[5]

---

[5] We emphasize that our decision does not preclude the State from re-indicting Baker for the four counts of committing lewd act upon a minor that he was convicted by using appropriate time limitations for the charged offenses. Had the indictments alleged that the conduct occurred during the summer months of the years 1998 through 2004, i.e., June 1 until September 1, we believe the indictments would have been sufficient.

**REVERSED**.

HEARN, J. concurs.  PLEICONES, J., concurring in result only.
TOAL, C.J., dissenting in a separate opinion in which KITTREDGE, J.,
concurs.

**CHIEF JUSTICE TOAL:** I respectfully dissent. In my view, the court of appeals did not err in upholding the trial court's refusal to quash the indictment. Furthermore, I would find that the trial court did not err qualifying a police officer as an expert in forensic interviewing. Thus, I would affirm Petitioner's convictions for lewd act.

## I. Indictments

"The indictment is a notice document." *State v. Gentry*, 363 S.C. 93, 102–03, 610 S.E.2d 494, 500 (2005). As such,

> [T]he circuit court should judge the sufficiency of the indictment by determining whether (1) the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon; and (2) whether it apprises the defendant of the elements of the offense that is intended to be charged.

*Id.* (citation omitted); *see also* S.C. Code Ann. § 17-19-20 (2003) ("Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood . . . ."). Thus, "an indictment passes legal muster when it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood." *State v. Tumbleston*, 376 S.C. 90, 98, 654 S.E.2d 849, 853 (Ct. App. 2007).

Generally, when an indictment is challenged based on an overly broad time period, our courts have considered whether time is a material element of the offense and whether the time period covered by the indictment occurred prior to the return of the indictment by the grand jury. *Id.* at 98–99, 654 S.E.2d at 853–54.

In *State v. Wade*, this Court unequivocally refused to adopt a per se rule of overbreadth for the mere fact that the time period covered in the indictment is lengthy. 306 S.C. 79, 85, 409 S.E.2d 780, 783 (1991). That case, like this case, involved allegations of sexual abuse perpetrated upon a minor who could not remember the exact dates that her uncle molested her. *Id.* at 84, 409 S.E.2d at 783.

Thus, the indictment included a time period spanning two years. *Id.* at 81, 409 S.E.2d at 781. To determine whether the petitioner was prejudiced by this lengthy time period, the Court declared it would examine the "'surrounding circumstances' that existed pre-trial, in order to determine whether a given defendant has been . . . taken by surprise and hence [is] unable to combat the charges against him," and *not* the mere fact that the indictment covers a longer time frame. *Id.* at 86, 409 S.E.2d at 784.

Thus, the coverage of six years in these indictments does not necessarily require a finding of overbreadth; accordingly, I analyze each of the factors explicated in our precedents in turn.

First, the language of the indictment substantially tracks the statutory language such that Petitioner was on notice of the charges he faced. Section 16-15-140 of the South Carolina Code, defining lewd act, provides:

> It is unlawful for a person over the age of fourteen years to willfully and lewdly commit or attempt a lewd or lascivious act upon or with the body, or its parts, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or of the child.

S.C. Code Ann. § 16-15-140 (2003 & Supp. 2012). In comparison, the amended indictments for lewd act state:

> That [Petitioner], a person over the age of fourteen (14) years, did in Sumter County between the period of June 1, 1998 and September 1, 2004 violate Section 16-15-140 of the Code of Laws of South Carolina . . . in that . . . [Petitioner] did willfully and lewdly commit or attempt to commit a lewd and lascivious act upon or with the body, or any part or member thereof, of a child under the age of sixteen (16) years, to wit: [Victim 1] . . . , with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of himself or of the said child.[6]

Likewise, section 16-3-655 of the South Carolina Code, defining CSC with a Minor - Second, provides:

---

[6] The indictment for count five of lewd act involving Victim 2 is substantially similar, but Petitioner was acquitted of that charge.

(B) A person is guilty of criminal sexual conduct with a minor in the second degree if: (1) the actor engages in sexual battery with a victim who is fourteen years of age or less but who is at least eleven years of age; or (2) the actor engages in sexual battery with a victim who is at least fourteen years of age but who is less than sixteen years of age and the actor is in a position of familial, custodial, or official authority to coerce the victim to submit or is older than the victim.

S.C. Code Ann. § 16-3-655 (Supp. 2007).[7] Petitioner's CSC with a Minor - Second indictment states:

That [Petitioner] did in Sumter County between the period of June 1, 2004 and September 1, 2004, willfully and unlawfully commit criminal sexual conduct with a minor in the second degree by engaging in sexual battery with a minor who was at least fourteen (14) years of age but who was less than sixteen (16) years of age, to wit: [Victim 1] . . . and the actor was in a position of familial, custodial, or official authority to coerce the victim to submit or was older than the victim, to wit: vaginal digital intrusion and cunnilingus, in violation of Section 16-3-655(3) of the Code of Laws of South Carolina. . . .

Because time is not an element of the offenses, and because the time period covered by the indictments occurred prior to the return of the indictments by the grand jury, we must look to the surrounding circumstances leading to the enlargement of time in the indictments. *Tumbleston*, 376 S.C. 90, 101–02, 654 S.E.2d 849, 855 ("Indeed, indictments for a sex crime that allege offenses occurred during a specified time period are sufficient when the circumstances of the case warrant considering an extended time frame." (internal citations omitted)). To this end, the dates were extended in response to the child victims' collective recollection that the abuse began before the birth of their sister (in 1998) after viewing their aunt's scrapbook, but *after* the grand jury returned the initial indictments. Thus, these circumstances warranted broadening the time period to cover the years in which the abuse allegedly occurred (1998 until 2004), and under our existing framework, the indictments should be upheld.

---

[7] Because Appellant was indicted on July 20, 2006, we cite to the section and language effective at the time of the indictments. *Compare* S.C. Code Ann. § 16-3-655 (Supp. 2007), *with* S.C. Code Ann. § 16-3-655 (Supp. 2012).

However, the majority focuses on the date the amended indictments were returned by the grand jury on October 26, 2006, in relation to the date the case was called for trial on November 13, 2006, to support its finding that the indictments were insufficient. In so holding, the majority erroneously conflates the concepts of *notice* and *preparation*.

In my opinion, Petitioner's ability to prepare a more robust defense does not remotely figure into the notice paradigm. For this reason, the majority's focus on whether Petitioner had the opportunity to develop an alibi defense is completely inappropriate (and not just because Petitioner did not raise that argument himself). To me, such concerns are better addressed in a motion for trial continuance, which, incidentally, counsel for Petitioner filed for this exact reason in light of the enlarged scope of the indictments. For whatever reason, the motion was denied. Although Petitioner raised the propriety of the denial of this motion to the court of appeals (which affirmed), Petitioner has not raised the denial of the continuance to this Court. Thus, in my view, this was not a proper consideration on appeal.

More importantly, I think today's precedent will gravely restrict the State's ability to prosecute child sex abuse cases. Here, as in most cases of child sex abuse, the State was attempting to prosecute numerous, covert sexual encounters occurring over the course of many years. Our appellate courts have heretofore been careful to fashion a rule which takes the relative immaturity, lack of sophistication, and *trauma* suffered by child victims into account, and has sought to balance these considerations with the court's obligation to also protect the constitutional rights of the criminal defendant. *See, e.g.*, *Tumbleston*, 376 S.C. 102, 654 S.E.2d at 855 ("The stealth and repetitive nature of the alleged conduct compels identification of the broader time period. The victim is a young child, whom one cannot reasonably expect to recall the exact dates of the sexual abuse."). I fear that today's ruling will greatly hinder the State's ability to bring future perpetrators to justice, as it is often impossible for a child to recall the exact date(s) he or she was abused. We have never required exacting specificity when upholding an indictment in this scenario before, and in my opinion, it is a mistake to add such a requirement now.

Without a doubt, these indictments put Petitioner on notice of what charges he was "called upon to answer" and apprised him of the elements of the offenses the State intended to charge. *Gentry*, 363 S.C. at 102–03, 610 S.E.2d at 500. This is all that the law required.

Accordingly, I would affirm the court of appeals' decision upholding the circuit court's denial of Petitioner's motion to quash the indictments.

## II. Expert Testimony

Furthermore, I would find that while the trial court erred in qualifying Herod, a victim's assistance officer, the admission of this testimony did not cause prejudice to Petitioner.

During trial, both girls testified against Petitioner. In addition, the State sought to qualify Gwen Herod as an expert in forensic interviewing and assessment of child abuse. The trial court conducted an *in camera* hearing to determine Herod's qualifications. Herod testified that she has been employed with the Sumter County Sheriff's Office since 1998 as a victim assistance officer. As part of her duties, Herod conducts forensic interviews of child victims of sexual abuse, usually at the behest of the investigating officer.

The circuit court allowed the State to proffer Herod's testimony to determine whether she was qualified as an expert in the field of forensic interviewing. Herod stated that she is a certified forensic interviewer due to her training, which involved taking two one-week courses sponsored by the American Prosecutors Research Institute (APRI). Herod testified she obtained certification in 2001 after passing a written examination and conducting a mock interview under observation. In 2003, Herod attended another advanced week-long APRI course. Herod further testified that she is certified on a state and national level as a victim assistance specialist, and is a member of APRI, the National Organization for Victim Assistance, the South Carolina Law Enforcement Victim Advocate Association, the National Sheriffs' Association Victim Advisory Board, and the South Carolina Victim Assistance Network Advisory Board. Through the National Sheriffs' Association, she has trained other advocates across the nation. Under cross-examination, Herod acknowledged that she did not belong to an "association of forensic interviewers," she lacked a college degree, and her formal training was limited to the two APRI courses. Nevertheless, over Petitioner's objection, the circuit court qualified Herod as an expert in forensic interviewing.

Before the jury, Herod restated her background, and the circuit court again qualified her as an expert in forensic interviewing. Herod testified that since 2001, she has utilized the Rapport, Anatomy Identification, Touch Inquiry, Abuse Scenario, and Closure (RATAC) method to conduct forensic interviews of child victims of sexual abuse. Herod testified that in the "Rapport" stage, the

interviewer "open[s] communication lines" with the child to "mak[e] the child feel at ease." Herod stated further that in this stage, the interviewer "also assess[es] the child, insuring that . . . that they're able to . . . to participate in the interview in a satisfactory way and . . . explain[s] to the child who [the interviewer is] and what [her] role is." In the "Anatomy Identification" stage, the interviewer shows pictures of the male and female anatomy to the child to ensure that she understands what body parts the child is describing, and explains to the child that he or she may use these pictures to circle and identify body parts throughout the interview. In the "Touch Inquiry" stage, Herod testified that the interviewer asks the child about the types of touching that the child deems acceptable, and the touches that make the child uncomfortable. In the "Abuse Scenario" stage, the child is asked to tell the interviewer about the circumstances of the abuse, and other information deemed necessary to the investigation. Finally, Herod testified that in the "Closure" stage, the interviewer ensures the child does not have any questions before ending the interview.

Herod testified that she conducted an interview with Victim 1 on October 21, 2004, using the RATAC method. During her testimony, Herod relayed that Victim 1 told her that the abuse occurred at her aunt and uncle's home in Sumter County during the summer months but that she could not recall the specific years of the abuse. Based on the interview, Herod recommended Victim 1 receive a medical exam. Herod also conducted a forensic interview with Victim 2 on the same date, and she denied being sexually abused by Petitioner at that time. During a follow-up meeting with the family, Victim 2 disclosed that Petitioner had abused her also, which prompted Herod to again meet with Victim 2 on June 26, 2006, to discuss the allegations. At the time, Victim 2 was unable to give an exact date for the alleged abuse, but later identified a time frame.

Under cross-examination, defense counsel questioned Herod about the particular stages, and in regards to the Rapport stage, questioned Herod about her assessment of whether the child is telling the truth. In response, Herod stated that "we talk about [the importance of telling the truth] and I'm also assessing whether the child can even differentiate between the truth and a lie . . . . [b]ut we talk about the truth and the importance of it."

"The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's discretion." *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997) (citation omitted). An appellate court will not disturb the trial judge's determination regarding a

witness's qualifications to testify as an expert absent a showing of an abuse of discretion. *State v. Schumpert*, 312 S.C. 502, 505, 435 S.E.2d 859, 861 (1993) (citation omitted); *State v. Henry*, 329 S.C. 266, 273, 495 S.E.2d 463, 466 (Ct. App. 1997). "An abuse of discretion occurs when there is an error of law or a factual conclusion which is without evidentiary support." *Gooding*, 326 S.C. at 252, 487 S.E.2d at 598 (citation omitted).

Rule 702, SCRE, which governs the admission of expert testimony, provides:

> If scientific technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

To be competent to testify as an expert, "a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony." *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598 (citation omitted). "Expert testimony differs from lay testimony in that an expert witness is permitted to state an opinion based on facts not within his firsthand knowledge or may base his opinion on information made available before the hearing so long as it is the type of information that is reasonably relied upon in the field to make opinions." *Watson v. Ford Motor Co.*, 389 S.C. 434, 445–46, 699 S.E.2d 169, 175 (2010) (citing Rule 703, SCRE). Defects in an expert witness's education and experience go to the weight, rather than the admissibility, of the expert's testimony. *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598 (citation omitted).

In *State v. Kromah*, we stated that we could "envision no circumstance where [a forensic interviewer's] qualification as an expert at trial would be appropriate." 401 S.C. 340, 357 n.5, 737 S.E.2d 490, 499 n.5 (2013); *cf. State v. Douglas*, 380 S.C. 499, 505, 671 S.E.2d 606, 609–10 (2009) (Pleicones, J., dissenting) ("[I]t was not only unnecessary but improper for the circuit court to qualify Herod as an expert witness" as "[t]his Court's jurisprudence and Rule 702 of the South Carolina Rules of Evidence emphasize the role of the trial court as the gatekeeper in determining, among other things, whether the expert's testimony consists of scientific, technical, or specialized knowledge that will assist the trier of fact." (citations omitted)).

Of course, the trial judge in the instant case did not have the benefit of the *Kromah* decision. While the majority did not address this issue in full, I take issue with its reliance on *Kromah*. *See Kromah*, 401 S.C. at 357 n.5, 737 S.E.2d at 499 n.5. The facts of *Kromah* were categorically different from the facts here, and I would hold that Herod's qualification as an expert was harmless beyond a reasonable doubt. *See id.*, 401 S.C. at 360, 737 S.E.2d at 501.

Here, Herod never testified on direct examination about the victims' credibility. The only time her testimony could be construed to touch on the victims' credibility occurred while under cross-examination by *Petitioner*'s counsel:

Q: In regards to the . . . [R]apport stage, part of what you emphasize to them is the importance of telling the truth don't you?

A: Yes, sir. We talk about that and I'm also assessing whether the child can even differentiate between the truth and a lie.

Q: Okay.

A: But we talk about the truth and the importance of it.

Q: Right.

A: Yes, sir, I did.

Q: Okay. And you also did a forensic interview of [Victim 2] at that time, is that correct?

A: After [Victim 1].

Q: After [Victim 1].

A: The same day.

Q: Both of those occurred on October 21st, 2004, right?

A: That's correct.

Q: When you . . . when you did the forensic interview on [Victim 1] you emphasized to her in that standardized portion the importance of telling the truth, didn't you?

A: Yes, sir, I do in ever[y] interview.

Q: Okay. And you did it then . . . if you did it with every interview[,] you did it with [Victim 2].

A: I did.

In my opinion, the majority should not have relied on *Kromah*. If Herod in any way improperly bolstered the victims' credibility, it was because Petitioner raised the issue of Herod's assessment of the veracity of the child victim in her methodology. Therefore, he cannot now complain that it was error. *See State v. Robinson*, 305 S.C. 469, 474, 409 S.E.2d 404, 408 (1991) (finding where "petitioner opened the door to . . . evidence, he cannot complain of prejudice from its admission"). The focus in *Kromah* was on testimony that improperly bolstered the child victim's testimony. To the extent the forensic interviewer's testimony does not touch on credibility, there is no reversible error.

In my opinion, while the circuit court should not have qualified Herod as an expert, any error resulting from the inclusion of her testimony was harmless beyond a reasonable doubt.

### III. Conclusion

For the foregoing reasons, I would affirm the court of appeals' decision upholding the circuit court's refusal to quash the indictments, and finding Petitioner suffered no prejudice despite Herod's qualification as an expert in forensic interviewing.

**KITTREDGE, J., concurs.**